CROSLEY CORPORATION v. HAZELTINE CORPORATION.

No. 7725.

Circuit Court of Appeals, Third Circuit.

Sept. 11, 1941.

Rehearing Denied Oct. 30, 1941.

Samuel E. Darby, Jr., of New York City, and Hugh M. Morris and S. Samuel Arsht, both of Wilmington, Del. (Floyd H. Crews and Alden D. Redfield, both of New York City, on the brief), for appellant.

R. Morton Adams and Pennie, Davis, Marvin & Edmonds, all of New York City (E. Ennalls Berl, of Wilmington, Del., on the brief), for appellee.

Before BIGGS, MARIS, and CLARK, Circuit Judges.

MARIS, Circuit Judge.

Hazeltine Corporation is a Delaware corporation which holds title to some 400 patents in the radio and television field and, through a subsidiary, maintains laboratories in which it conducts research in these fields. The Crosley Corporation is an Ohio corporation with its principal place of manufacture in Cincinnati. In June, 1939, Crosley terminated a twelve years' license agreement with Hazeltine and refused to renew it. In December, 1939, Hazeltine formally notified Crosley that the latter was infringing 22 patents owned by Hazeltine. In May, 1940, Hazeltine sued Crosley in the District Court for the Southern District of Ohio, alleging infringement of two of the 22 patents specified in the formal notice. Crosley contested validity of the patents and denied infringement. That suit was heard in November, 1940, and is now awaiting decision. On January 13, 1941, Crosley commenced an action in the District Court for the District of Delaware seeking a declaratory judgment as to the validity and infringement of the remaining 20 patents specified in the notice. Seventeen days later Hazeltine filed nine suits in the District Court for the Southern District of Ohio in which it sought decrees that Crosley had

infringed 15 of the patents specified in the notice and involved in the declaratory judgment suit. On February 3, 1941, Hazeltine filed an answer in the declaratory judgment suit and on the same day Crosley moved for a preliminary injunction to restrain Hazeltine from proceeding with the nine suits in Ohio until the District Court in Delaware had adjudicated the declaratory judgment suit. This injunction was refused and the present appeal followed.

We are thus called upon to determine whether a United States district court which first obtains jurisdiction of the parties and issues may, and under the circumstances of this case should, enjoin proceedings involving the same issues and parties begun thereafter in another United States district court. To put it in other words, does a district court have the power to issue such an injunction and if it does, was it an abuse of discretion to deny such an injunction under the circumstances of this case?

The determination of the question of the power of the court to issue such an injunction involves primarily a consideration of the powers of the Court of Chancery of England, for, as stated by Bates on Federal Equity Procedure, § 526, "The remedies in equity in the courts of the United States are the same, and are to be granted and administered according to the principles, usages and remedies in equity in England at the time our government was established; and where, under the English chancery system, relief by injunction can be given, the same or similar relief may be given by the courts of the United States." As Mr. Justice Stone said in Matthews v. Rodgers, 284 U.S. 521, 529, 52 S.Ct. 217, 221, 76 L.Ed. 447, "The equity jurisdiction conferred on inferior courts of the United States by section 11 of the Judiciary Act of 1789, 1 Stat. 78, and continued by section 24 of the Judicial Code (28 U.S.C.A. § 41), is that of the English court of chancery at the time of the separation of the two countries."

Our examination of the English cases indicates that the English Court of Chancery at the beginning of the Nineteenth Century exercised unquestioned power to enjoin parties from proceeding elsewhere, either at law or in equity, once it had obtained jurisdiction of a cause. Some consideration of a few of the cases will be helpful.

In Reynolds v. Nelson (1821), 6 Madd. 290, 56 Eng.Repr. 1101, it appeared that the defendant, after a decree for specific performance of a contract for the purchase of an estate, to which he submitted, brought an action at law against the plaintiff for damages due to the failure of the plaintiff to complete his contract within the time specified. The plaintiff applied for an injunction to restrain the proceedings at law. The Vice-Chancellor, Sir John Leach, said: " * * * If the Plaintiff in equity had before the decree applied for an injunction to restrain the Defendant from proceeding in an action at law to recover damages, I should upon the same principle have then granted the injunction; and a fortiori, I must grant it now. The proceeding at law is inconsistent with the decree in equity."

In Beckford v. Kemble (1822), 1 Sim. & St. 7, 57 Eng.Repr. 3, the facts were that the plaintiff had obtained a decree in the English Court of Chancery directing the taking of accounts in order to determine the amount necessary to redeem mortgages on plantations in Jamaica. The defendants filed suit in the Chancery Court of Jamaica to foreclose the mortgages. The plaintiff prayed in the English Court of Chancery that the defendants be enjoined from proceeding with the foreclosure suit in Jamaica. The injunction was allowed, the Vice-Chancellor, Sir John Leach, saying: "All the parties are in England; and it is plain therefore that the accounts can much more conveniently, as well as more satisfactorily, be taken here than in Jamaica. It appears to me that the Plaintiff in this Court has a clear equity to be protected against a double account of the amount due on the mortgages. I shall therefore make an order to restrain the Defendants from proceeding in Jamaica until the further order of the Court, with liberty to the Defendants to make such application as they shall be advised, with respect to the Jamaica cause, after the Master shall have made his report here; the Plaintiff in this cause undertaking to consent to such order or orders in the Court in Jamaica as this Court shall think reasonable."

In Frank v. Basnett (1835), 2 My. & K. 618, 39 Eng.Repr. 1080, the facts were that the plaintiff had obtained a decree in the Court of Chancery for specific performance of an agreement whereby the defendant agreed to convey land to the plaintiff

and the plaintiff agreed to erect a bridge. The cause was referred to a master to settle a conveyance. After the decree and pending the master's proceedings, the defendant brought an action at law for damages alleged to have been occasioned by the plaintiff not having erected the bridge. The plaintiff filed a supplemental bill, praying an injunction to restrain this latter action. The injunction was allowed. The Lord Chancellor, Lord Lyndhurst, stated: "No action could be brought upon the contract up to the time of the decree, and after the decree some time must necessarily elapse before the directions of the Court could be carried into effect. Supposing that there was improper delay in the Master's office, the whole proceedings were before the Court, and it was competent to the party complaining of such delay to apply to the Court, and, if he were so advised, to move for liberty to bring an action. Had such a course been adopted, the Court might, if it had seen occasion, have directed an action to be brought; but the Defendant had no right to resort himself to a Court of Law pending the proceedings in the Master's office.

"I consider the form in which the proceedings at law are sought to be restrained, whether by supplemental bill or otherwise, wholly immaterial; and that the Plaintiff is entitled to have the action restrained by special injunction, upon the ground that it is an infringement of the rules of the Court to bring an action, while the Court is working out a decree, *and that where a proceeding is before this Court, and the Court has full power to do justice, a party ought not to resort to any other tribunal.*" (Italics supplied.)

To similar effect are the cases of Beauchamp v. Huntley (1822), Jacob 546, 37 Eng.Repr. 956; Booth v. Leycester (1838), 3 My. & Cr. 459, 40 Eng.Repr. 1004; Prudential Assurance Co. v. Thomas [1867], L.R. 3 Ch. 74.

Bispham in his Principles of Equity, Sixth Ed., says: "413. A court of equity frequently interferes by injunction to restrain proceedings at law for the purpose of preventing unnecessary or vexatious litigation. This it does * * * by restraining a party from bringing an action in another court after a court of equity has once obtained possession of a cause * * *."

"414. After a court of equity has once got possession of a cause, it will not suffer any of the litigating parties to resort to another tribunal. Either a plaintiff or defendant who attempts to do so may be restrained by a motion in the cause. * * *"

"415. Equity interferes by injunction to restrain repeated attempts to litigate the same right. * * *"

"424. * * * A court of equity may sometimes restrain proceedings in another court of equity. * * *"

We conclude that the English Court of Chancery had the power at the time our government was established to enjoin parties before it from proceeding in another court in a controversy involving the same issues, and that the federal district courts, as courts of equity, have similar power. In this conclusion we are supported by the recent decision of the Supreme Court in Steelman v. All Continent Corp., 301 U.S. 278, 57 S.Ct. 705, 81 L.Ed. 1085, which held that a federal district court, under the circumstances of that case, did have power to enjoin parties from proceeding in equity in another district court. In that case the district court for the district of New Jersey, sitting as a court of bankruptcy, in the exercise of the equitable powers of such a court enjoined the prosecution against the trustee of the bankrupt of an equity suit in the district court for the Eastern District of Pennsylvania. The injunction was allowed on the ground that the Pennsylvania suit, if pressed to a decree, might thwart an inquiry into frauds charged against the bankrupt. The Supreme Court held that the injunction was proper. Mr. Justice Cardozo said (301 U.S. at pages 290, 291, 57 S.Ct. at page 710, 81 L.Ed. 1085): "He is not seeking a writ of prohibition directed to the court itself. He is not seeking an injunction to vindicate his exclusive control over a res in his possession, or in the possession, actual or constructive, of the court that appointed him. * * * What he seeks is an injunction directed to a suitor, and not to any court, upon the ground that the suitor is misusing a jurisdiction which by hypothesis exists, and converting it by such misuse into an instrument of wrong. * * * Suits as well as transfers may be the protective coverings of fraud. * * * We are unable to yield assent to the statement of the court below that 'the restraint of a proper party is legally tantamount to the restraint of the court itself.' The reality of the dis-

tinction has illustration in a host of cases. * * *"

There is also direct authority in two circuit courts of appeals for the proposition that the federal district court which first obtains jurisdiction may preserve its jurisdiction by injunction. In re Georgia Power Co., 5 Cir., 89 F.2d 218 certiorari denied, 302 U.S. 692, 58 S.Ct. 11, 82 L.Ed. 535; Milwaukee Gas Specialty Co. v. Mercoid Corporation, 7 Cir., 104 F.2d 589.

█ Hazeltine, however, urges the applicability of the rule enunciated in Kline v. Burke Construction Co., 260 U.S. 226, 230, 43 S.Ct. 79, 81, 67 L.Ed. 226, 24 A.L.R. 1077 "that where the action first brought is in personam and seeks only a personal judgment, another action for the same cause in another jurisdiction is not precluded" and contends that this rule is conclusive of the issue before us. That this is the rule where the concurrent jurisdiction is in federal and state courts is well settled. As was said by Mr. Justice Stone in Penn General Casualty Co. v. Pennsylvania, 294 U.S. 189, 195, 55 S.Ct. 386, 389, 79 L.Ed. 850 "Where the judgment sought is strictly in personam, for the recover of money or for an injunction compelling or restraining action by the defendant, both a state court and a federal court having concurrent jurisdiction may proceed with the litigation, at least until judgment is obtained in one court which may be set up as res adjudicata in the other * * *." To exactly the same effect is the case of Princess Lida v. Thompson, 305 U.S. 456, page 466, 59 S.Ct. 275, at page 280, 83 L.Ed. 285, "* * * it is settled that where the judgment sought is strictly in personam, both the state court and the federal court, having concurrent jurisdiction, may proceed with the litigation at least until judgment is obtained in one of them which may be set up as res judicata in the other. * * *" Many additional authorities may be cited to the same effect. In all these cases, however, the Supreme Court was dealing with the situation where the actions were pending in both state and federal courts. Underlying all of them is the provision of Section 265 of the Judicial Code, 28 U.S.C.A. § 379, first enacted in 1793, that "The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy." Likewise the state courts are without power to interfere with proceedings in the federal courts. This was early settled by the Supreme Court upon principles of judicial comity. See Warren, Federal and State Court Interference, 43 Harvard Law Rev. 345. Speaking of Section 265 of the Judicial Code Mr. Justice Frankfurter said in Hale v. Bimco Trading Co., 306 U.S. 375, 378, 59 S.Ct. 526, 527, 83 L.Ed. 771: "That provision is an historical mechanism * * * for achieving harmony in one phase of our complicated federalism by avoiding needless friction between two systems of courts having potential jurisdiction over the same subject-matter." See, also, Oklahoma Packing Co. v. Oklahoma Gas Co., 309 U.S. 4, 60 S.Ct. 215, 84 L.Ed. 537. The rule quoted above also finds application in many litigated cases where a court in one state, in which an action has been brought, is asked to enjoin the prosecution of another suit against the defendant upon the same claim in the courts of another state. Under what circumstances such an injunction should issue has been a source of considerable discussion in the cases.

█ The cases to which we have referred clearly have no application to a situation in which two actions are pending in courts of equal dignity within the judicial system of a single sovereignty. An interesting discussion of a similar situation arising in the judicial system of one of the states will be found in Trees v. Glenn, 319 Pa. 487, 181 A. 579, 102 A.L.R. 304. In that case the Supreme Court of Pennsylvania held that a court of common pleas of one county of the state, sitting as a court of equity, had the power to enjoin the parties before it from prosecuting a suit in equity in the court of common pleas of another county of the same state. We conclude that the court below had the power to enjoin the parties within its jurisdiction from bringing other suits upon the same cause of action in another federal district court.

█ We accordingly reach the question whether under the circumstances of this case the court abused its discretion in refusing to grant the injunction. We think it did. It was long ago laid down by Chief Justice Marshall as a salutary rule that "In all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it." Smith v. McIver, 9 Wheat. 532, 535, 22 U.S. 532,

535, 6 L.Ed. 152. It is of obvious importance to all the litigants to have a single determination of their controversy, rather than several decisions which if they conflict may require separate appeals to different circuit courts of appeals. No party has a vested right to have his cause tried by one judge rather than by another of equal jurisdiction. Certainly, the defendant cannot be heard to complain that the suit has been brought in the district of its domicile rather than in the district where the plaintiff is located. The party who first brings a controversy into a court of competent jurisdiction for adjudication should, so far as our dual system permits, be free from the vexation of subsequent litigation over the same subject matter. The economic waste involved in duplicating litigation is obvious. Equally important is its adverse effect upon the prompt and efficient administration of justice. In view of the constant increase in judicial business in the federal courts and the continual necessity of adding to the number of judges, at the expense of the taxpayers, public policy requires us to seek actively to avoid the waste of judicial time and energy. Courts already heavily burdened with litigation with which they must of necessity deal should therefore not be called upon to duplicate each other's work in cases involving the same issues and the same parties.

What has been said applies, we think, with especial force to patent suits, such as the one before us, brought under the Declaratory Judgment Act, 28 U.S.C.A. § 400. The act enables the challenger of an alleged patent right to have the right adjudicated without having to take the risk of continuing his infringement pending action by the patent owner. In the declaratory judgment action the patent owner may counterclaim for infringement. Civil Procedure, Rule 13 (a), 28 U.S.C.A. following section 723c. The intent of the Declaratory Judgment Act is to enable an alleged infringer to avoid a multiplicity of suits by the patent owner. When the district court of the domicile of a patent owner has been asked by an infringer to determine by declaratory judgment the issues of the patent's validity and infringement, it would neutralize the beneficial effect of the Declaratory Judgment Act as well as impose an unwarranted burden upon the federal judiciary, to permit the patent owner thereafter to prosecute infringement suits in other district courts against the same infringer. It follows that in the case before us the defendant should not be permitted to require the district court for the Southern District of Ohio to conduct and the plaintiff to defend nine separate trials to determine the validity of fifteen patents and their alleged infringement by the plaintiff, when the jurisdiction of the district court of Delaware has already been invoked to determine the validity and infringement of all of these patents. We accordingly conclude that the District Court for the District of Delaware, having the power to issue the preliminary injunction prayed for, abused its discretion in refusing to exercise that power.

The decree of the district court is reversed and the cause is remanded with directions to grant the temporary injunction prayed for.