## NATIONAL HAIRDRESSERS' & COSMETOLOGISTS' ASS'N, Inc., et al. v. PHILAD CO.

### Civ. A. No. 155.

District Court, D. Delaware.

Oct. 14, 1941.

As Modified on Denial of Rehearing

Nov. 15, 1941.

George B. Finnegan, Jr. (of Morgan, Finnegan & Durham), of New York City, and E. Ennalls Berl (of Southerland, Berl, Potter & Leahy), of Wilmington, Del., for plaintiffs.

Arthur J. Hudson (of Kwis, Hudson & Kent), of Cleveland, Ohio, and Herbert L. Cohen, of Wilmington, Del., for defendant.

BIGGS, Circuit Judge.

The amended complaint at bar asserts two causes of action. The plaintiffs, the National Hairdressers' and Cosmetologists' Association, Inc., and Fred The Hair Stylist, Inc., seek a declaratory judgment adjudging Josef Mayer's[1] Reissue Patent No. 18,841 to be invalid and a declaration that this patent is not infringed by Fred or the members of National.[2] Fred and National seek also to enjoin the defendant from asserting that the members of National infringe the Mayer patent. Upon the alleged second cause of action the plaintiffs seek to enjoin the Philad Company from bringing any suits alleging infringement of the Mayer patent and to enjoin Philad from attempting to collect license fees under the patent "* * * by acts of harassment, intimidation or false impersonation * * *" as alleged in the complaint. Philad filed a counterclaim claiming that Fred is guilty of infringement of the patent and asking for relief.

The amended complaint is drawn as a class action. National is a non-profit membership corporation organized under the laws of New York. Fred is also a New York corporation, and conducts a hairdressing shop and beauty parlor, practising the so-called "Croquignole" hair waving process. Fred is a member of National. The amended complaint alleges that the plaintiffs are representatives of a class so numerous that it is impracticable to bring all its members before the court; that this class consists of approximately five thousand co-members and affiliated members substantially all of whom have been charged by the defendant with infringe-

ment of the Mayer patent. The amended complaint further states that there are common questions of law and fact affecting the rights of the parties constituting the class designated and that common relief is sought. Before determining the question as to whether or not the suit may be maintained as a class suit, it is necessary to pass upon the question of whether or not the relief sought in the complaint may be granted. To do this it is necessary to determine the validity of Mayer's reissue patent.

As to Validity of the Patent Sub Judice.

Reissue Patent No. 18,841 in suit is the second reissue of Patent No. 1,622,957 (following Reissue Patent No. 17,393 as the first reissue) for "Waving Process and Apparatus". Patent No. 1,622,957 was issued on application S.N. 135,439 filed September 14, 1926. This application was filed in the Patent Office as a division of an earlier application filed March 19, 1925 for "Heater, Waving Process and Apparatus", S.N. 16,784. I must decide first whether application S.N. 135,439 which ripened into Patent No. 1,622,957 from which stems the patent at bar was a true and legal division of Mayer's original application, S.N. 16,784.

The plaintiffs contend that the reissue patent and particularly claims 3, 4 and 5[3] thereof are invalid and void. Claim 5 is typical of the last three claims. It is as follows: "The process of waving hair upon the human head which comprises gripping a flat strand of hair adjacent to the scalp with a moisture-tight clamp, winding said strand spirally from its end upon a rod nearly to said clamp, enclosing said strand together with moisture in a moisture retaining envelope, enclosing said strand and envelope within a heater extending about the same to the clamp, and then causing the heater to supply heat to the strand." The specifications of the patent refer to the two well-known means of hair curling or hair waving in use; viz., by use of the spindle-wind (referred

---

[1] Mayer, a citizen of Czechoslovakia, assigned his rights in the reissue patent in suit to the defendant, the Philad Company.

[2] The suit at bar so far as the first cause of action is concerned is a patent suit brought under the Declaratory Judgment Act, Section 274d of the Judicial Code, 28 U.S.C.A. § 400. See the earlier decision of this court upon motion to dismiss, 34 F.Supp. 264, wherein it was held that an actual controversy within the meaning of the declaratory judgment statute existed between Fred and Philad. As to the jurisdiction of this court upon the second cause of action asserted by the plaintiffs see the heading "As to the Nature of the Relief to be Granted" at a later point in this opinion.

[3] Claim 6 has been disclaimed.

to also as the corkscrew or helical wind) and by the Croquignole wind. In respect to them Mayer states, "In the older or 'spindle wind' type of waving, a strand of hair is coiled from its roots helically upon a curling rod, while in the newer or 'Croquignole' style of waving, which, as it is applied to the human head, is a development of the present invention, the hair strands are wound from their free ends towards the scalp, turn upon turn, upon a curler. The hair in the older spindle type of waving is bunched together to form a substantially round strand, while in the Croquignole style of waving, in accordance with my present invention, the hair is spread out and held in substantially a single plane to form a flat strand."

The specifications go on to say that in every case after winding, by the spindle wind as well as by Croquignole wind, the hair must be heated in order to make the curl or wave permanent. It may be stated that generally the spindle wind results in a curl and the Croquignole in a wave. Mayer does not claim to be the inventor of the Croquignole wind. In his specifications he calls attention to the two existing methods of hair curling or hair waving.[4] The elements of novelty in Mayer's patent are set forth in the last sentence of that portion of the specifications quoted immediately above and consist in the forming of a flat band of hair, putting a clamp around the band near the scalp and winding that band (under tension made possible by the clamp) from the tip end of the strand of hair toward the scalp; viz., by the Croquignole wind.[5] In respect to the time of applying the clamp, Mayer states in his specifications, "The strand of hair is separated from the remaining hair and then the clamp applied. This holds the strand substantially at right angles to the scalp whereby it may receive further treatment as hereinafter fully described." [6] Mayer then sets forth the croquignole method of winding from the end of the hair to the scalp, turn upon turn, upon a curler.

Accepting the claims and the specifications of the patent at face I find three essentials in the Mayer process preceding the wetting and heating of the hair. These essentials are: (1) dividing the hair into flat strands; (2) fastening upon one of these strands, close to the scalp, a clamp; and (3) winding the strand from its end to a point near the clamp upon a rod. Are all of these elements set forth in the original Mayer application S.N. 16,784 as they must be if the divisional application S.N. 135,439 and the patent sub judice stemming from it are to be deemed valid? I conclude that they are not.

In his original application of March 19, 1925, S.N. 16,784, Mayer sets forth as one object of his invention the elimination of all binding. He states that to accomplish this end he first applies "a clamping device" to the hair roots. He says that after the application of the clamping device the hair is wetted with a specified solution and " * * * then wound over a suitable curler * * * ". Mayer speaks of hair waving in his application rather than of hair curling, but the fact remains that nowhere in the application does Mayer refer to Croquignole winding after clamping, viz., winding the hair over and over upon itself from the tip end of the strand toward the scalp after clamping. The claims of the original application are for a process which includes the use of a clamp, the wrapping of the hair into a protective covering and the heating of it by electricity, but it was not until the filing of the divisional application S.N. 135,439, upon September 14, 1926 that Mayer made reference to Cro-

---

[4] For descriptions of the Croquignole wind see the following decisions: Naivette, Inc., v. Bishinger, 6 Cir., 61 F.2d 433; Philad Co. v. Murray's Beauty Salon, D.C., 14 F.Supp. 626; and Philad Co. v. Rader, D.C., 15 F.Supp. 509.

[5] In connection with the question of invention Judge Wilbur writing for the Circuit Court of Appeals for the Ninth Circuit in Johnson Co. v. Philad Co., 96 F.2d 442, 444, stated: "The evidence shows that the Mayer process solved the problem confronting hair dressers by providing a practical method of applying a permanent Croquignole wave to the human head. As we have said, the essence of the invention was applying clamps to the hair before winding. Although this step was simple, it apparently was not obvious to those skilled in the art of hairdressing and the introduction of the patented method met with immediate and substantial commercial success." It must be borne in mind that in making these statements Judge Wilbur was not dealing with the validity of the divisional application but was passing upon the question of invention as disclosed by the patent.

[6] Numbers designating apparatus have been omitted from the foregoing quotation.

quignole winding. In this application he refers to separating a strand of hair from that remaining, applying a clamp to the strand and provides . that, " \* \* \* the hair should be wound from the end toward the scalp on a rod or cylindrical support \* \* \*". Patent No. 1,622,957 issued upon this divisional application. I note, however, that even in the claims of this patent when issued Mayer makes no reference to Croquignole winding unless it be by indirection. For example, in the third claim of No. 1,622,957 he speaks of winding the hair so that the axis of the wound hair will be substantially parallel with that part of the head from which the hair extends. In croquignole winding the hair is not only wound from the tip end toward the scalp, but it is also wound around and around upon itself as opposed to the older spindle winding, which was performed helically, that is to say by winding the hair like a screw around the spindle. It is notable that it is not until we reach application S.N. 346,174, filed March 11, 1929, upon which first Reissue Patent No. 17,-393 was issued, that we come to the actual claims involved in the patent in suit. I cite this last fact to indicate that Mayer's process was subject to evolution in Mayer's mind by which he finally arrived at the disclosures of application S.N. 346,174, and finally showed Croquignole winding of a flat strand of hair toward a clamp binding the strand closely to a position near the scalp.

■ Based largely upon the testimony of Samuel Steek, a professional hair dresser of experience, Philad makes a number of contentions as to inferences which may be drawn from Mayer's original application. Philad argues that from the application itself it may be inferred that Mayer was referring to Croquignole winding after clamping in his application. I find these contentions untenable. Conceding that patents and applications must be construed by those skilled in the art, I conclude that if Mayer did have Croquignole winding after clamping in mind when he filed his first application, he did not disclose this. The defendant argues that in stating that the hair should be "wound over a suitable curler" Mayer referred not to spindle or helical winding but to Croquignole winding, viz., from the end of the strand over and over upon itself toward the scalp. While I think it is a physical impossibility to wind hair on a spindle or rod over and over up-

on itself when the strand is fastened close to the scalp by a clamp otherwise than from the end of the strand toward the scalp, and this would be Croquignole winding after clamping, a strand of hair may also be wound screw like about a spindle after clamping by putting the spindle adjacent to the clamp and wrapping the strand around it. It follows therefore that in making this argument the defendant is assuming as a premise the very thing which it desires to prove. The phrase upon which Philad relies, "wound over a suitable curler", is too ambiguous to support such an argument.

Nor can I perceive why the statement by Mayer in S.N. 16,784 to the effect that he proposes to "eliminate all binding" refers to Croquignole waving after clamping. If a strand of hair be fastened to a spindle, it is physically possible to wind the hair helically around the spindle beginning with that part of the hair immediately adjacent to the spindle.

It was also contended by Steek that because Mayer referred in his first application to waving rather than to curling, of necessity he was referring to Croquignole winding which produces a wave and not to helical or spindle winding which produces a curl. The contentions of this practical witness are offset by equally practical considerations of the prior art for the fact is that patents issued close to the time of Mayer's application use the word "wave" and the word "curl" almost as if they were synonymous terms. See the Popin patent of May 23, 1922, No. 1,416,750, for a "Heater for Waving Hair"; the patent to De Ruvo of January 24, 1922, No. 1,-404,587, for a "Hair Curler"; the British Patent to Boudou, No. 183,902, of July 24, 1922 for an "Improved Process of and Apparatus for the Permanent Waving of the Hair". I particularly note the patent to Jacobs of February 19, 1923, No. 1,477,873; for a "Hair-Waving Device", wherein she speaks of a flat wave.made by making each turn of hair to lie beside another. I am also of the opinion that the clamping member shown by Mayer is not particularly suggestive of Croquignole waving. See patent to Capdevila, No. 1,578,012, of March 23, 1926, wherein a narrow pivot jaw clamp is employed for use to form a helical curl. Finally the drawings attached to Mayer's original application contain not the slightest suggestion of Croquignole winding after binding. This is in contrast to the drawings of Mayer's applica-

tion S.N. 135,439 and of Patent No. 1,-622,957 where Figure 2 shows an actual Croquignole wind formed and in position just beyond the restricting clamp.

Other arguments of the defendants as to inferences which allegedly may be drawn of Croquignole winding in the original Mayer application do not require discussion. Mayer's application S.N. 135,439 clearly sets forth matter pertinent to Mayer's alleged invention set forth in the reissue patent sub judice not contained in Mayer's original application.

 R.S. § 4888, 35 U.S.C.A. § 33, provides that an application, the prerequisite to the issuance of a patent, shall contain " * * * a written description of [the invention] and of the * * * process of * * * using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art * * * to * * * use the same * * *". As was stated by Mr. Justice Stone in Schriber-Schroth Co. v. Cleveland Trust Co., 305 U.S. 47, 57, 59 S.Ct. 8, 12, 83 L.Ed. 34, "The object of the statute is to require the patentee to describe his invention so that others may * * * use it * * * and 'to inform the public during the life of the patent of the limits of the monopoly asserted, so that it may be known which features may be safely used or manufactured without a license and which may not' * * * and that the application for a patent cannot be broadened by amendment so as to embrace an invention not described in the application as filed, at least when adverse rights of the public have intervened.", citing Chicago & N. W. Railway Co. v. Sayles, 97 U.S. 554, 563, 564, 24 L.Ed. 1053, Powers-Kennedy Corp. v. Concrete Co., 282 U.S. 175, 185, 186, 51 S.Ct. 95, 75 L. Ed. 278 and comparing Webster Electric Co. v. Splitdorf Electrical Co., 264 U.S. 463, 44 S.Ct. 342, 68 L.Ed. 792; Permutit Co. v. Graver Corporation, 284 U.S. 52, 52 S.Ct. 53, 76 L.Ed. 163; Crown Cork & Seal Co. v. Ferdinand Gutmann Co., 304 U.S. 159, 58 S.Ct. 842, 82 L.Ed. 1265.

 I have italicized the words of Mr. Justice Stone which have particular pertinency in the circumstances of the instant case. A divisional application is an amendment of an original application. The same rules apply to divisions as to amendments. The divisional application, S.N. 135,439, is an amendment of Mayer's original application S.N. 16,784. The amendment contained vital new matter, the introduction of end-to-scalp winding of a band of hair upon itself after clamping it at its roots near the scalp. This amended, divisional application, since it contained a new and vital step, must stand upon its own date, September 14, 1926, and cannot relate back in priority to March 19, 1925, the date of Mayer's original application S.N. 16,784. Nor did Mayer actually claim Croquignole wind of a flat strand of hair after binding until his application S.N. 346,174 filed March 11, 1929. Unfortunately for Philad, rights of the public intervened in the form of Mayer's British Patent No. 251,688, which was sealed August 12, 1926, upon an application filed with a complete specification on February 4, 1925.

The specifications of Mayer's British Patent, No. 251,688 for "Improvements in or Relating to Permanent Hair Waving Appliances", state, "This invention relates to permanent hair waving processes of the kind in which the hair is formed into flat strands, each of which is secured, at the end furthest from the roots, to a curler of substantially circular cross section, and wound thereon, each turn being laid upon the preceding turn." This is a clear description of Croquignole winding. The specifications also provide for " * * * the preparation of the hair prior to winding on a curler, [including] the step of clamping the hair in a flat strand near the roots between the edges of metal or other rigid flat bars hinged together at one end and provided with means for fastening the other ends together, * * *". Here is the clamp applied to the band of hair before winding. The patent also states, "After the two clamps have been placed in position the flat strand of hair * * * is moistened with a suitable solution such as hereinbefore indicated and then secured by means of a spring finger * * * to a curler * * * of substantial circular cross-section, and wound thereon, each turn being laid over the preceding turn."

 The drawings accompanying this patent, particularly Figure 7, show the clamp and a curl of hair wound in Croquignole fashion in position beyond it. Claim 1 of the British patent states, "In a permanent hair waving process of the kind set forth [in the specifications], the preparation of the hair prior to winding on a curler including the step of clamping the hair in a flat strand near the roots between the edges of metal or other rigid flat bars

hinged together at one end and provided with means for fastening the other ends together." If the specifications, claims and drawings of Mayer's British patent be compared with those of his United States Patent No. 1,622,957, and with the specifications, claims and drawings of application S. N. 135,439, it will be observed how closely they correspond. If on the other hand these be compared with the specifications, claims and drawings of Mayer's application S.N. 16,784, it will be noted immediately that the vital step of Croquignole winding after binding is omitted. Application S.N. 16,784 sets out the clamping device clearly, but as to the kind of winding it is singularly silent. Upon consideration the conclusion is inescapable that Mayer's British patent No. 251,688 is for the same invention as that embraced in his United States Application S.N. 135,437. The date of application of Mayer's British patent was February 4, 1925. The date of his United States Application S.N. 135,439 was September 14, 1926. The British patent fully discloses and claims the subject matter of the reissue patent sub judice. The substantial identity of specifications and claims of the two patents is fully established. In my opinion nothing more is required under the decision of the Supreme Court in Leeds & Catlin Co. v. Victor Talking Machine Company, 213 U.S. 301, 29 S.Ct. 495, 53 L.Ed. 805, and the decision of the Circuit Court of Appeals for this Circuit in Altoona Publix Theatres v. American Tri-Ergon Corporation, 72 F.2d 53, 59. While a heavy burden of proof rests upon Fred to show the identity in what was claimed, General Electric Company v. Alexander, 2 Cir., 280 F. 852, I think that he has met that burden.

It follows that Mayer incurred the bar contained in the first paragraph of R.S. § 4887, 35 U.S.C.A. § 32, and the issuance of his Reissue Patent No. 18,841, derived through the divisional application S.N. 135,439, represents an invalid grant by the Patent Office.

In making this statement I am not unmindful of the fact that claims 1 and 2 of Reissue Patent 18,841 are not essentially different from the specifications contained in Mayer's original application S.N. 16,784. Claim 1 reads " * * * including winding flat strands of hair on tubular members * * *". Claim 2 reads " * * * rolling the hair on a supporting member * * *". These words are ambiguous and might refer to either method of winding. Inasmuch as Croquignole winding is an essential element of the invention as disclosed in the specifications, the two claims fall as insufficient. Assuming arguendo, however, that the references to winding are to Croquignole winding, then claims 1 and 2 are bad for the same reasons as 3, 4 and 5. I hold all of the claims of the patent sub judice to be invalid.

Since the decision in the case at bar will affect a number of individuals and therefore may be expected to be carried to a higher court, I deem it desirable to pass upon the second ground of invalidity offered by the plaintiffs, that of prior invention by Robert Bishinger. Bishinger's patent No. 1,718,025 for "Hair-Curling Appliance" issued upon June 18, 1929 upon an application filed March 31, 1926, approximately five and a half months before Mayer's application S.N. 135,439. Bishinger indubitably disclosed the same process as that disclosed in application S.N. 135,439, So far as the evidence of the patents themselves is concerned, Bishinger, not Mayer, was the first and true inventor as required by R.S. § 4886, 35 U.S.C.A. § 31. Bishinger's application was a constructive reduction to practice. There is nothing in the record which gives Mayer a reduction to practice earlier than September 26, 1926. It is unnecessary therefore to treat in this opinion of any reduction to practice of his process by Bishinger earlier than that effected by his application. Because of Bishinger's patent also, the claims in issue of the patent sub judice must be deemed to be invalid and void.

It is unnecessary to pass upon the other defenses asserted by the plaintiffs to the reissue patent.

### As to the Nature of the Relief to be Granted.

Judge Nields in his opinion [7] [34 F.Supp. 266] upon the motion to dismiss filed in this case found that the capacity of National to sue could be disregarded since, as he pointed out, " * * * from the allegations of the amended complaint plaintiff, Fred, under Rule 23(a) (3) [Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c] has the right to appear as representative of the class of

[7] See note 2 supra.

hairdressers composing the membership of National.", citing Moore's Federal Practice, Vol. 2, p. 2242, and Independence Shares Corporation v. Deckert, 3 Cir., 108 F.2d 51, 56. While the defendant has denied the allegations of paragraph 3 of the amended complaint, these allegations have been proven to be true. National is shown to be an association having as members and affiliated members five thousand hair dressing shops and beauty parlors throughout the United States substantially all of whom practice the Croquignole method as does Fred, and many of whom have contributed to the maintenance of Fred's representative suit. Fred is engaged in conducting a hairdressing shop and beauty parlor and is shown to practice Croquignole waving in the manner disclosed in the patent sub judice. He is one of the members of National. In my opinion the learned Judge correctly stated the law of the case in holding that Fred has the right to maintain the suit at bar as a "spurious" class suit for the benefit of hairdressers composing the membership of National. An examination of the constitution and by-laws of National convinces me, however, that the association does not possess the capacity to bring suit. National therefore goes out as a party but it and membership in it, among other things, aid in establishing the class for whose benefit Fred has brought suit.

■ The plaintiffs' second cause of action is based on the contention that Philad has acted beyond its legal rights in attempting to collect royalties directly from beauty shops throughout the country. I think that it is unnecessary to pass upon this cause of action in order to grant the full relief sought by Fred. As already stated, the instant case is a patent suit brought under the Declaratory Judgment Act. As was said by the Circuit Court of Appeals for this Circuit in the case of Crosley Corporation v. Hazeltine Corporation, 122 F.2d 925, "The intent of the Declaratory Judgment Act is to enable an alleged infringer to avoid a multiplicity, of suits by the patent owner. When the district court of the domicile of a patent owner has been asked by an infringer to determine by declaratory judgment the issues of the patent's validity and infringement, it would neutralize the beneficial effect of the Declaratory Judgment Act as well as impose an unwarranted burden upon the federal judiciary, to permit the patent owner thereafter to prosecute infringement suits in other district courts against the same infringer." The words of Judge Maris in the cited case are peculiarly apt under the circumstances of the case at bar despite the fact that the appellate court was passing directly only upon questions raised by the failure of the court below to grant a preliminary injunction on behalf of a single plaintiff who was not suing in a representative capacity. See, also, Caterpillar Tractor Co. v. International Harvester Co., 9 Cir., 106 F.2d 769, 775, and United States Galvanizing & Plating Equipment Corporation v. Hanson-Van Winkle-Munning Co., 4 Cir., 104 F.2d 856, 861.

■ The relief granted to Fred and those on whose behalf his suit was brought should be completely effective and obviate the necessity or possibility of suits by Philad against members of the class represented by Fred based upon alleged infringement of Reissue Patent No. 18,841. It will include an adjudication that Reissue Patent No. 18,841 was invalidly issued and that its claims are invalid. Suits now pending brought by the defendant against members of National will be enjoined as will the bringing of future infringement actions. The defendant will be restrained from attempts to collect license fees under the reissue patent.

■ Such injunctive relief is sanctioned by the doctrine that a court of equity will act appropriately to prevent a multiplicity of suits. Gramling v. Maxwell, D.C., 52 F.2d 256, 261–263. Pomeroy's Equity Jurisprudence, 4th Ed., Vol. 1, p. 450 et seq. It is of course a practical impossibility for five thousand persons or any substantial number thereof to be made parties in the suit at bar. To require the members of Fred's class to sue Philad in separate suits or to permit Philad to maintain infringement suits against those members individually would engender all of the evils referred to in the Crosley Corporation case, supra. Authority for this position is not wanting in this court. See the decision of Judge Bradford in the case of Chew v. First Presbyterian Church, D.C., 237 F. 219, 240–242, and Moore's Federal Practice, Vol. 2, "The Spurious Class Suit", p. 2241 et seq.

There is a common interest in Fred and the members of his class to avoid suits and harassment based upon a patent declared invalid. Complete and final relief should be

granted that community of interest by one decree in the case at bar. Relief will be given upon that basis. A decree may be submitted in accordance with this opinion.

Findings of fact and conclusions of law are filed herewith in conformity with Rule 52 of the Rules of Civil Procedure, 28 U.S. C.A. following section 723c.

### On Motion for Rehearing.

The members of National who constitute the class which Fred represents and who therefore are entitled to injunctive relief, must be defined.

The plaintiff Fred contends that hairdressers and cosmetologists who are members of National when final judgment is entered are entitled to the benefits of the injunction. The defendant takes the position that only those hairdressers and cosmetologists who were members of National at the time the suit was instituted and who have remained members, not changing position, are entitled to relief.

The principle of res adjudicata governs this phase of the case at bar. In Crosley Corporation v. Hazeltine Corporation, 3 Cir., 122 F.2d 925, the patent holder was enjoined from bringing infringement suits in other jurisdictions pending the determination of the declaratory judgment action. The Court of Appeals did not hold that patent infringement suits could not be brought in other jurisdictions after the determination of the validity of the patent by the District Court. Assuming that a patent is held to be invalid or not infringed in a declaratory judgment suit, under the rule of the Crosley Corporation case the owner of the patent can still maintain infringement suits in other jurisdictions. As a defense the plaintiff in the declaratory judgment suit or those in privity with him can maintain a plea of res adjudicata in bar of the action. In the light of this fact, in the case at bar, in order to avoid a multiplicity of infringement suits against the members of Fred's class, in each of which the defendant could maintain a plea of res adjudicata, it is proper to grant injunctive relief. Acts of harassment against members of the class also should be enjoined.

There must be certainty as to the hairdressers and cosmetologists who are to obtain the benefits of the injunction and fairness in its terms. The hairdressers and cosmetologists entitled to relief are those who could maintain a plea of res adjudicata if sued by Philad for infringement of Reissue Patent No. 18,841. To maintain such a plea they must be precisely within the class which Fred represents. The amended complaint describes Fred's class as consisting of approximately five thousand co-members and affiliated members of National. The amended complaint was filed on June 25, 1940. On October 17, 1940 Philad by an interrogatory required Fred to state the names of all persons on whose behalf it was suing. In its answer filed January 31, 1941, Fred replied, "Plaintiff Fred is suing as a representative of all parties listed in Exhibit B." Exhibit B is a list of the co-members and affiliated members of National "as of on or about October 25, 1940".

I conclude that the hairdressers and cosmetologists who could maintain a plea of res adjudicata if sued by Philad for infringement of the reissue patent and who therefore are entitled to injunctive relief are those who were members of National on October 24, 1940, who have remained members and who have not taken out a user license from Philad under the patent. By Exhibit B Fred itself defines the class which it represents, limits it and names the members of it. But by taking a user license under the patent directly from Philad, a member, though defined and named as just indicated, must be deemed to remove himself from the class.

Final judgment will be entered accordingly.

The motion for rehearing is denied.