## DWINELL-WRIGHT CO. v. NATIONAL FRUIT PRODUCT CO., INC.

### No. 3773.

Circuit Court of Appeals, First Circuit.

July 16, 1942.

Edward G. Fenwick, of Washington, D. C., Simon P. Townsend, and Choate, Hall & Stewart, all of Boston, Mass., and Charles R. Fenwick and Mason, Fenwick & Lawrence, all of Washington, D. C., for appellant.

Clarence B. DesJardins, of Cincinnati, Ohio, and Gilman P. Welsh, of Boston, Mass., for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This appeal is from an interlocutory order enjoining the appellant, the defendant below, "from prosecuting or taking any further step", in a proceeding brought by it in the United States Patent Office for the cancellation of five certificates of trade-mark registration[1] previously issued to the plaintiff-appellee.

For convenience the parties will be referred to hereafter simply as the plaintiff and defendant.

On July 29, 1941, the plaintiff, a Virginia corporation, filed a complaint in the district court alleging that it was the owner of five registrations under the Trade-Mark Act of 1905, 33 Stat. 724, 15 U.S.C.A. § 81 et seq., of the trade-mark "White House", sometimes but not always accompanied by a representation of the Executive Mansion covering the use of that mark in connection with the sale of apples, cider, cider vinegar, canned apples, apple sauce, apple juice and kindred apple products, as well as other vegetable and fruit products and juices; that for a long period of time it had marketed in interstate commerce "a line of fruit and vegetable products under the trade-mark White House, usually accompanied by a representation of the Executive Mansion"; and that the conduct of the defendant, a Massachusetts corporation, in using the same trade-mark, also in interstate commerce, for its line of fruit juices, particularly orange and grapefruit juice, "constitutes an infringement of plaintiff's said trade-mark, unfair competition,

---

[1] Nos. 104,641; 121,723; 299,846; 316,305; 336,489.

and unfair trading". The prayer of the complaint is for injunctive relief; for delivery up to the court for destruction of all "labels, signs, prints, packages, wrappers, or receptacles in the possession of defendant, bearing the said trade-mark of plaintiff"; for damages, in addition to the defendant's profits, and for a threefold increase of these damages, in the discretion of the court, "as allowed by the statute, in such case made and provided"; for, in addition to the plaintiff's damages, the profits made by the defendant by reason of its "unfair competition and unfair trading"; for costs; and for "such other and further relief as the nature of the case may seem to require and to your Honors shall be deemed meet and equitable."

On August 18, 1941, the defendant answered denying the plaintiff's ownership of the trade-mark and denying the validity of the registrations of that mark as alleged in the plaintiff's complaint. At the same time it also filed a counterclaim alleging ownership of the mark itself and infringement thereof by the plaintiff, and on September 5, 1941, the plaintiff answered the defendant's counterclaim. Neither party asked the district court for affirmative relief by way of cancellation of the other's trade-mark registrations under 15 U.S.C.A. § 102.

This was the state of the pleadings when, on September 6, 1941, the defendant filed a petition in the United States Patent Office under 15 U.S.C.A. § 93 for the cancellation of the plaintiff's five trade-mark registrations noted above. On October 20, 1941, the plaintiff filed in the Patent Office a motion to stay this cancellation proceeding, and four days later it moved in the district court for an injunction to restrain the defendant from prosecuting its cancellation proceedings in the Patent Office. On November 22, 1941, the examiner in charge of interferences granted the plaintiff's motion to stay reciting:

"It seems likely to the examiner that said civil action will involve a determination of the question of ownership, as between the parties hereto, of the marks concerned, and that such determination would make it unnecessary to further contest this cancellation proceeding. Other things being equal, it is the usual practice under such circumstances to suspend the proceeding last instituted pending the final determination of the other.

"The examiner is persuaded that such practice should be followed in this case.

"Accordingly, proceedings herein are suspended pending the final determination of the civil action identified in the motion. Not later than twenty days subsequent to such final determination this case should be called up by the party interested; otherwise it will then proceed as by default."

Thereupon the defendant petitioned that the Commissioner of Patents exercise his supervisory authority over the examiner of interferences and vacate the stay of proceedings granted by the latter. This petition was granted and the Assistant Commissioner of Patents, on January 12, 1942, overruled and vacated the order staying the cancellation proceedings. In his opinion the Assistant Commissioner said:

"If in fact the registrations were improvidently granted and instead should have been refused because the marks were not registrable to respondent at the time the applications for registration were filed, it seems to me the sooner the mistake of the Patent Office is rectified the better, not only in the interest of justice to those whom the registrations may be affecting adversely but also to correct the register without undue delay.

"In my opinion, since the registrations issued as a result of decisions of a Patent Office tribunal these decisions should be reviewed by the Patent Office tribunals when challenged through a proper proceeding, for instance, this cancellation proceeding which is authorized by the statutes. Sec. 13, Act of February 20, 1905. Furthermore, cancellation of the registrations would not deprive respondent of such common law rights in the marks as respondent may possess and registrations are not necessarily essential to supporting a suit for unfair competition. In the equity suit cancellation of the registrations is not prayed for.

"In view of the above it is my opinion this cancellation proceeding should not be stayed pending the termination of the equity suit."

After this order was made the district court brought forward the motion to enjoin the defendant from prosecuting its cancellation proceeding before the Patent Office, and, after a hearing, granted it. The defendant then took this appeal.

■ Federal jurisdiction is based upon diversity of citizenship and an amount in

controversy, exclusive of interest and costs, in excess of the statutory amount, and also upon 15 U.S.C.A. § 97. Jurisdiction over appeals of this nature is conferred upon this court by 28 U.S.C.A. § 227.

■ Registration of a trade-mark under the Trade-Mark Act of 1905 neither enlarges nor abridges the registrant's substantive common-law rights in the mark. "The Registration Act of 1905 (33 Stat. 724), amended in 1906 (34 Stat. 168) and in 1909 (35 Stat. 627) and in 1913 (37 Stat. 649 * * *), without changing the substantive law of trade-marks, provided, in the manner prescribed, for the registration of marks (subject to special exceptions) which, without the statute, would be entitled to legal and equitable protection." Beckwith's Estate, Inc., v. Commissioner of Patents, 252 U.S. 538, 543, 40 S.Ct. 414, 416, 64 L.Ed. 705. See, also, Charles Broadway Rouss, Inc., v. Winchester Co., 2 Cir., 300 F. 706, 713, 714; Nims on Unfair Competition and Trade-Marks, (3d Ed.) §§ 223, 223(a).

■ What registration under the act does is to affect the registrant's remedies for the enforcement of the rights given him by the common law. It does not abridge the remedies available to him without registration,[2] but it enlarges them, and among the remedial rights conferred is the right to invoke the jurisdiction of the federal courts, regardless of diversity of citizenship and amount in controversy, 15 U.S.C.A. § 97, and the right, in case a registrant shall recover a verdict against one who has infringed, to obtain a judgment "for any sum above the amount found by the verdict as the actual damages, according to the circumstances of the case, not exceeding three times the amount of such verdict, together with the costs." 15 U.S.C.A. § 96.

■ Registration, however, does not conclusively establish either a registrant's ownership of the mark, 15 U.S.C.A. § 96, or its validity. "While it is true that a registered trade-mark cannot be canceled except by direct attack in the way prescribed in the statute, trade-marks registered under the law * * * are not thereby rendered valid. Their validity may still be questioned in any suit in which they are relied upon." Kellogg Co. v. National Biscuit Co., 2 Cir., 71 F.2d 662, 666. See, also, Armstrong Paint & Varnish Co. v. Nu-Enamel Corp., 305 U.S. 315, 322, 323, 59 S.Ct. 191, 83 L.Ed. 195.[3] In fact, under the rule as it used to be the validity of the registration of a trade-mark was always necessarily in issue in suits of the sort here under consideration, if there was not diversity of citizenship and a sufficient amount in controversy, because it was originally held that the jurisdiction of federal courts to consider the question of unfair competition in such cases depended upon the validity of the registration of the plaintiff's trade-mark. Elgin National Watch Co. v. Illinois Watch Case Co., 179 U.S. 665, 21 S.Ct. 270, 45 L.Ed. 365; Leschen & Sons Rope Co. v. Broderick & Bascom Rope Co., 201 U.S. 166, 26 S.Ct. 425, 50 L.Ed. 710. But these cases have been overruled, the rule now in effect being that "Unless plainly unsubstantial the allegation of registration under the act is sufficient to give jurisdiction of the merits." And "Once properly obtained, jurisdiction of the one cause of action, the alleged infringement of the trade-mark, persists to deal with all grounds supporting it, including unfair competition with the marked article." Armstrong Paint & Varnish Co. v. Nu-Enamel Corp., 305 U.S. 315, 324, 59 S.Ct. 191, 195, 83 L.Ed. 195. So, the plaintiff's trade-mark having been registered, the district court, even if there were not in this

---

[2] 33 Stat. 730, § 23; 15 U.S.C.A. § 103 "Nothing in this subchapter [subdivision of this chapter] shall prevent, lessen, impeach, or avoid any remedy at law or in equity which any party aggrieved by any wrongful use of any trade-mark might have had if the provisions of said subchapter [subdivision] had not been passed."

[3] Under consideration in this case and the one cited next above it were registrations under the Trade-Mark Act of 1920. 41 Stat. 533, 15 U.S.C.A. § 121 et seq. But since the purpose of the latter act was to enlarge the class of persons eligible to register under the earlier one of 1905 so as "to give effect to certain provisions of the convention for the protection of trade-marks and commercial names, made and signed in the city of Buenos Aires, in the Argentine Republic, August 20, 1910", and since it made available to the larger class the remedies available to registrants under the earlier act (see §§ 2, 3, 4 and 6 of the 1920 Act; Armstrong Paint & Varnish Co. v. Nu-Enamel Corp., 305 U.S. 315, 323, 59 S. Ct. 191, 83 L.Ed. 195, the cases, as cited, are authorities in the case at bar.

case diversity of citizenship and the requisite amount in controversy, would not need to pass upon the validity of the plaintiff's registrations in order to preserve its jurisdiction. That is secure by reason of the registrations of the plaintiff's trade-mark in the Patent Office, and in addition there is here diversity of citizenship and an amount in controversy, exclusive of interest and costs, in excess of three thousand dollars. But the fact remains that the question of the validity of the plaintiff's registrations was before the court below. That issue was raised by the pleadings, and the court below, if the plaintiff should prevail, would have to pass upon it in order to pass upon the plaintiff's prayer for a threefold increase in its damages.

■ Thus, although neither party sought to have the trade-mark registrations of the other cancelled by the district court, as either might have done under § 22 of the 1905 Act, 15 U.S.C.A. § 102, still the issue of the validity of the plaintiff's registrations was before the district court, and not before it as merely a collateral issue, when the defendant raised the same issue in the Patent Office by there filing its petition for cancellation.

The district court in its memorandum of decision gave its reasons for granting the plaintiff's motion to restrain the defendant from prosecuting its proceeding for cancellation in the Patent Office as follows [42 F.Supp. 1016, 1017]:

"It has long been settled that a court of equity which has first taken jurisdiction of a case may, in order to prevent vexatious and harassing litigation, enjoin the parties from further proceeding in another forum. While the jurisdiction of federal courts to interfere with state court proceedings is sharply limited by statute, there is no reason why this principle should not apply between two federal courts, or between a federal court and an administrative tribunal of the United States. Time, expense, and inconvenience may be saved both to litigants and tribunals if the court which first takes jurisdiction of an issue between two parties exercises its power to prevent multiplicity of actions and duplication of effort. It was said in Gage v. Riverside Trust Co., Ltd., et al., C.C., 86 F. 984, 985, 999, 'The proposition that the court which first acquires jurisdiction of a cause and of the parties thereto will hold and maintain it, in order to settle and end the controversy, does not admit of question.' "

Undoubtedly the rule relied upon by the court below, in spite of its limitation with respect to proceedings in the courts of a State by § 265 of the Judicial Code, 28 U.S.C.A. § 379, is applicable when two actions are pending in courts of equal dignity within the judicial system of a single sovereignty. Georgia Power Co. v. Tennessee Valley Authority, 5 Cir., 89 F.2d 218, 221, and cases cited. It has been applied in patent cases. Crosley Corp. v. Hazeltine Corp., 3 Cir., 122 F.2d 925; Milwaukee Gas Specialty Co. v. Mercoid Corp., 7 Cir., 104 F.2d 589, 592.

In the Crosley case the plaintiff in a suit for a declaratory judgment as to the validity and infringement of a patent moved for an injunction to restrain the defendant therein from prosecuting a suit for infringement of the same patent in another district court. The district court denied the motion but on appeal the Circuit Court of Appeals held that the injunction moved for, not only may, but must, issue. In the Milwaukee Gas Specialty Co. case the factual situation, which we need not give in detail, was different but the Circuit Court of Appeals, applying the rule that "the court first acquiring jurisdiction is entitled to maintain it until its duty is fully performed, and the jurisdiction involved is exhausted", ordered the prosecution of the second suit suspended pending the determination of the first one.

But, counsel on both sides of the case at bar admit that they have been unable to find any case in which an appellate court has considered the question of the propriety of an injunction issued by a district court to restrain a party before it from proceeding before an administrative tribunal with the litigation there of an issue pending between them before the court, and we have been unable to find one ourselves. We have found a case, however, in which the plaintiff in a suit like the one before us asked a district court for an injunction to restrain the defendant from proceeding in the Patent Office with a petition for the cancellation of the plaintiff's trade-mark. Baldwin Co. v. R. S. Howard Co., D. C., 233 F. 439. In this case, however, the cancellation proceeding ante-dated the suit and the district court, in its discretion, declined to issue the injunction. All that court said on the subject was (page 445 of 233 F.) "I am inclined to think, if this court has the power, it is inadvisable to seek to prevent the continuance of the cancellation

proceedings in the office." On appeal (2 Cir., 238 F. 154; Id., 256 U.S. 35, 41 S.Ct. 405, 65 L.Ed. 816) the point was not discussed or even mentioned.

The question presented, then, is one of first impression. In our view its answer depends upon the applicability of the reasons underlying the rule applied by the court below to the situation presented by the facts in the case at bar. These reasons were well stated in Crosley Corp. v. Hazeltine Corp., 3 Cir., 122 F.2d 925, 930, as follows:

"The party who first brings a controversy into a court of competent jurisdiction for adjudication should, so far as our dual system permits, be free from the vexation of subsequent litigation over the same subject matter. The economic waste involved in duplicating litigation is obvious. Equally important is its adverse effect upon the prompt and efficient administration of justice. In view of the constant increase in judicial business in the federal courts and the continual necessity of adding to the number of judges, at the expense of the taxpayers, public policy requires us to seek actively to avoid the waste of judicial time and energy. Courts already heavily burdened with litigation with which they must of necessity deal should therefore not be called upon to duplicate each other's work in cases involving the same issues and the same parties."

Clearly it is just as harassing and vexatious, and there is just as much waste and duplication of effort involved in twice trying the same issue between the same parties whether the second trial is before an administrative tribunal or before a court, but the defendant contends that there is no escape from two trials between the parties of the issue of the validity of the plaintiff's registrations, one in the court below and the other in the Patent Office, because "Regardless of the decision of the court below, the Commissioner of Patents will pass on the question of cancellation and under the statute and decisions the decision of the lower court is not binding on the Commissioner of Patents." The statute referred to by the defendant in support of its proposition is 15 U.S.C.A. § 93 which provides: "*Whenever* any person shall deem himself injured by the registration of a trade-mark in the Patent Office he may *at any time*[4] apply to the

Commissioner of Patents to cancel the registration thereof". The decisions upon which the defendant relies are one by the Court of Customs and Patent Appeals, (Van Camp Sea Food Co. Inc., v. Westgate Sea Products Co., Cust. & Pat.App., 48 F.2d 950), and one by the Commissioner of Patents. Glenmore Distilleries Co. v. National Distillers Products Corp., 51 U. S.P.Q. 329.

We do not construe, as the defendant would have us, the word, "whenever" and the phrase "at any time" as used in the statute quoted above to mean what they literally imply. To so construe them would mean that any person deeming himself injured by the registration of a trade-mark could petition the Patent Office for its cancellation as many times as he chose, and we do not believe that the Congress intended any such preposterous result. It seems to us that the statute excludes the defense of laches in a cancellation proceeding (see Cluett, Peabody & Co. v. Hartogensis, Cust. & Pat.App., 41 F.2d 94), but that it leaves untouched the question of the effect to be given by the Patent Office in a cancellation proceeding to a previous determination of the question of the validity of a trade-mark made by a court in an infringement suit between the same parties.

We do not consider that the cases relied upon by the defendant are in point. Under consideration in both of them were proceedings in opposition to the granting of a registration under 15 U.S.C.A. § 86, not proceedings under 15 U.S.C.A. § 93 for the cancellation of a registration already granted, and it seems to us that there is an aspect to opposition proceedings which differentiates them, for the purposes of the case at bar, from proceedings for cancellation.

Section 86 above provides that upon the filing, in the form required, of an application for the registration of a trade-mark, and upon payment of the specified fees, "the Commissioner of Patents shall cause an examination thereof to be made; and if on such examination it shall appear that the applicant is entitled to have his trade-mark registered under the provisions of this subchapter [subdivision of this chapter], the commissioner shall cause the mark to be published at least once in the Official Gazette of the Patent Office." The section then goes on

---

[4] Italics supplied.

to provide that within 30 days after such publication "Any person who believes he would be damaged by the registration of a mark may oppose the same by filing notice of opposition", in a form prescribed. The section concludes: "If no notice of opposition is filed within said time, the commissioner shall issue a certificate of registration therefor, as hereinafter provided for. If on examination an application is refused, the commissioner shall notify the applicant, giving him his reasons therefor." Opposition proceedings, then, are in part at least in aid of the Commissioner in the performance of his statutory duty to examine for himself a trade-mark offered for registration, but, once a trade-mark has been registered, there is no provision in the statute whereby the Commissioner, on his own initiative, may himself institute cancellation proceedings. Such proceedings are purely adversary in their nature, the adversaries being the registrant and "any person" who "shall deem himself injured by the registration"; the examiner in charge of interferences in the Patent Office, and on appeal the Commissioner in person, being the primary arbiters between them. Thus cancellation proceedings in the Patent Office are closely akin to judicial proceedings in a court; and from this it seems to us that whatever the situation may be with respect to proceedings instituted in opposition to the registration of a trade-mark, a district court, in order to avoid vexatious and harassing litigation and to promote economy, may on motion restrain a party before it from contesting the validity of a trade-mark by cancellation proceedings when the validity of the mark is already in issue between the same parties before the court.

From what has been said the fallacy is apparent in the defendant's argument to the effect that the injunction granted interfered "with the Commissioner of Patents in his performance of his statutory duty by denying to him the assistance, testimony and legal advice of appellant and its attorneys". In view of the nature of the Commissioner's duties in cancellation proceedings, he is impeded by the injunction in the performance of those duties to no greater extent than a court is impeded in the performance of its duties when a party is restrained from proceeding before it.

The order of the District Court is affirmed with costs to the appellee.