**SCOVILL MANUFACTURING COM-
PANY, Plaintiff,**

v.

**SUNBEAM CORPORATION, Defendant.**

**Civ. A. No. 4533.**

United States District Court,
D. Delaware,
Wilmington, Delaware.

April 24, 1973.

Hugh L. Corroon of Potter, Anderson & Corroon, Wilmington, Del., and Bruce B. Krost of Woodling, Krost, Granger & Rust, Cleveland, Ohio and Dallett Hoopes, Scovill Mfg. Co., Waterbury, Conn., of counsel, for plaintiff.

James M. Tunnell, Jr. and Douglas E. Whitney of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., and William E. Schuyler, Jr. and Dale H. Hoscheit of Schuyler, Birch, Swindler, McKie & Beckett, Washington, D. C. and George R. Clark, Sunbeam Corp., Chicago, Ill., of counsel, for defendant.

## OPINION AND ORDER

LATCHUM, District Judge.

The matters presently before the Court are the defendant's motion to transfer this action to the United States District Court for the Northern District of Illinois and the plaintiff's motion to compel answers to certain interrogatories propounded to the defendant.

The background facts are as follows. The defendant Sunbeam Corporation ("Sunbeam"), a Delaware corporation accused Scovill Manufacturing Company ("Scovill"), the plaintiff, of infringing five Sunbeam patents by its manufacture of a spray and steam iron. After a period of time during which correspondence was exchanged, Scovill filed a declaratory judgment action in this Court seeking to have Sunbeam's asserted patents declared invalid and not infringed.[1] Sunbeam counterclaimed, charging Scovill with infringement of Sunbeam's five iron patents. Scovill propounded a set of 50 interrogatories to Sunbeam relating to the five patents. As to 24 of the interrogatories, Scovill charges that

---

1. The five patents involved are United States Patent 3,304,636 ("Vieceli I patent"), United States Patent 3,335,507 ("Vieceli II patent"), United States Patent 3,541,306 ("Barnas patent"), United States Patent 3,599,357 ("Gronwick I patent"), and United States Patent 3,691,660 ("Gronwick II patent").

Sunbeam either wrongfully refused to answer or gave unresponsive answers. Scovill has made a motion under Rule 37, F.R.Civ.P., to compel Sunbeam to file responsive answers to the interrogatories. Sunbeam, of course, opposes the motion. Sunbeam asserts that the answers given were responsive and the refusals to answer were justifiable because the answers sought would be speculative in nature. For its part, Sunbeam has filed a motion to transfer this action to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). Scovill opposes the transfer and, in the alternative, argues that the only proper transfer would be to the United States District Court for the District of Connecticut.

The Court will deal first with the motion to transfer. Scovill argues first that this Court lacks power to transfer the action to Illinois. The argument runs as follows. Under the patent venue statute, 28 U.S.C. § 1400(b), an action for patent infringement may only be brought where the defendant resides, or where the defendant has committed acts of infringement *and* has a regular and established place of business. Although Scovill initiated suit by filing a declaratory judgment action, wherein venue is governed by the general venue statute, 28 U.S.C. § 1391(c), it argues that Sunbeam's counterclaim converted the action to one for patent infringement so that venue is governed by 28 U.S.C. § 1400(b). Under 28 U.S.C. § 1400(b), if Sunbeam had chosen to initiate the suit, it could only have brought an action in Connecticut, where Scovill is incorporated, or in Ohio, where the allegedly infringing spray and steam irons were manufactured. Scovill argues that by its initiating suit via the declaratory judgment action in Delaware where Sunbeam is incorporated, it waived its right to be sued for patent infringement only in Connecticut or Ohio, but that the waiver was a limited one confined solely to this Court. Since, Scovill argues, 28 U.S.C. § 1404(a) only permits trans-

fers to districts where the action might have been brought, the only transfers permissible under the statute would be to Connecticut or Ohio.

The Court rejects Scovill's argument. The fatal flaw, as far as this Court is concerned, is the assumption that Sunbeam's counterclaim converts this action from one for declaratory judgment to one for patent infringement for the purpose of determining where the suit might have been brought. This contention was rejected by the Supreme Court in Hoffman v. Blaski, 363 U.S. 335, 343, 80 S.Ct. 1084, 1089, 4 L.Ed.2d 1254 (1960). In that case the Court stated:

"'But we do not see how the conduct of a defendant after suit has been instituted can add to the forums where it "might have been brought." In the normal meaning of words this language of § 1404(a) directs the attention of the judge who is considering a transfer to the situation which existed when suit was instituted.'"

Therefore, for purposes of 28 U.S.C. § 1404(a), the effect of a counterclaim is ignored in determining where the declaratory judgment action could have been brought originally.

Venue in a declaratory judgment action based on patent infringement is not covered by 28 U.S.C. § 1400(b), but rather is governed by the general venue statute 28 U.S.C. § 1391(c), which provides that a corporation may be sued in any district where it does business. Barber-Greene Co. v. Blaw-Knox Co., 239 F.2d 774, 776 (C.A.6 1957); Minnesota Automotive, Inc. v. Stromberg Hydraulic Brake & Coupling Co., 309 F. Supp. 614, 616 (D.Minn.1970); Metropolitan Staple Corp. v. Samuel Moore & Co., 278 F.Supp. 85, 86 (S.D.N.Y.1967). Since Sunbeam, the defendant in the declaratory judgment complaint, has its corporate headquarters and main place of business in Chicago and nearby suburbs, the suit might have been instituted by Scovill in the United States District Court for the Northern District of Illinois. That being the case, the Court

has power under 28 U.S.C. § 1404(a) to transfer the action to that district.

However, the Court must also consider the propriety of such a transfer. 28 U.S.C. § 1404(a) sets forth three criteria for a court to consider in ordering transfer: convenience of the parties, convenience of witnesses, and the interests of justice.

■■ The burden of showing that transfer is warranted under these criteria is on the moving party. Kaiser Industries Corp. v. Wheeling-Pittsburgh Steel Corp., 328 F.Supp. 365, 368 (D.Del.1971); Kewanee Oil Co. v. M & T Chemicals, Inc., 315 F.Supp. 652, 654 (D.Del.1970). The mere desire of a defendant to transfer to a different forum is not sufficient to warrant a transfer. Kaiser Industries Corp., supra, 328 F.Supp. at 368. Brown v. Insurograph, Inc., 85 F.Supp. 328, 330 (D.Del.1949).

■ The plaintiff's choice of forum is entitled to substantial weight, Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (C.A.3, 1970), cert. den. 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971), and transfer should be denied where the factors to be considered are evenly balanced or only slightly favor a transfer, Aetna Casualty & Surety Co. v. Singer-General Precision, Inc., 323 F.Supp. 1141, 1143 (D.Del.1971), so that the moving party's reasons should be fairly substantial, Kaiser Industries Corp., supra, 328 F. Supp. at 369; Nocona Leather Goods Co. v. A. G. Spalding & Bros., Inc., 159 F.Supp. 269, 279 (D.Del.1957).

The record indicates that while Sunbeam is a Delaware corporation, its headquarters and its Research and Engineering Department where the patents in suit were developed are located in the greater Chicago area. It also appears that the potential witnesses who were involved in developing the patents in suit are located near Chicago. On the other hand, Scovill's corporate headquarters are in Connecticut and its steam iron manufacturing facilities are in Byesville, Ohio. The record indicates that most of Scovill's potential witnesses are located in Connecticut.

From the above it appears that a transfer to the United States District Court for the Northern District of Illinois would be more convenient for Sunbeam and Sunbeam's witnesses. Since Scovill and its witnesses would be required to travel and to encounter out-of-town living expenses regardless of whether trial is held in Delaware or Illinois, the transfer would at most only be slightly more inconvenient to them. Therefore, the convenience of parties and witnesses weighs in favor of transfer.

■ However of the three statutory standards which must be considered on a motion for transfer under 28 U.S.C. § 1404(a), the interest of justice is the factor entitled to the greatest weight, Kaiser Industries Corp., supra, 328 F. Supp. at 370; Lank v. Federal Insurance Co., 309 F.Supp. 349, 352–353 (D.Del. 1970), and it is on the basis of this factor that the Court declines to transfer. Scovill was subject to charges of infringement from Sunbeam which hindered Scovill's business relations with its retail outlets. Rather than remain in a state of uncertainty and insecurity while Sunbeam decided whether and when to bring suit, Scovill brought the instant action for declaratory relief. It was for this very type of situation that the Declaratory Judgment Act was passed. Borchard, Declaratory Judgments 299 (2d Ed., 1941). Had Sunbeam promptly filed a complaint for patent infringement instead of leaving Scovill in a position of uncertainty, venue would have been governed by 28 U.S.C. § 1400(b) so that the complaint could only have been filed in Connecticut or Ohio. Now, however, Sunbeam claims to have a wider choice of fora because venue in a declaratory judgment is governed by 28 U.S.C. § 1391(c), and it seeks to have the instant action transferred to the United States District Court for the Northern District of Illinois, (a district in which it could not have instituted an infringement suit against Scovill), because it

would be more convenient for it to litigate literally in its own backyard. To permit a transfer under these circumstances would be tantamount to rewarding Sunbeam for engaging in the dilatory tactics which forced Scovill to seek declaratory relief. For that reason the Court concludes that it would not be in the interest of justice to transfer. In light of the foregoing, the Court declines to grant the motion.

The Court will now consider Scovill's Rule 37 motion to compel answers to certain interrogatories propounded to the plaintiff. The interrogatories for which answers are sought fall into two categories: those which Scovill charges Sunbeam answered unresponsively and those which Sunbeam refused to answer. The Court will deal first with those answers allegedly unresponsive to the interrogatories.

Interrogatory 11 asks Sunbeam to show the difference in function and in steam distribution results between certain discharge ports on Sunbeam's Vieceli I patent and those on Sunbeam's Jepson United States Patent 3,221,112 ("Jepson patent"). Sunbeam's answer referred to the Vieceli I patent, col. 1, ll. 33–34 and col. 4, ll. 1–26 which in substance claims that the Vieceli I patent results in a wider steam distribution over the iron's entire sole plate. This answer appears responsive to the interrogatory and need not be answered further.

Interrogatory 12 asks for a similar differentiation on certain discharge ports between the Vieceli I patent and the Vieceli II patent. Again Sunbeam referred to the Vieceli II patent, col. 1, ll. 39–65. Here, however, the substance of the language quoted was that the improved steam distribution was accomplished in a less expensive manner than the Vieceli I patent. This answer does not appear responsive to the interrogatory, which inquired into the differences in function and steam distribution results. Therefore, Sunbeam will be required to give a more responsive answer.

Interrogatory 13 inquires into the difference in function and steam distribution results in two separate sets of discharge ports on the Vieceli II patent. In answer, Sunbeam referred to the Vieceli II patent, col. 3, l. 73 to col. 4, l. 4. The cited language does not appear responsive to the question and Sunbeam will be required to give a more responsive answer.

Interrogatory 14 inquires into differences in function and steam distribution results between certain discharge ports on the Vieceli I patent, the Vieceli II patent, and the Jepson patent. Sunbeam gave the following answer: "The arrangement in subparagraph (a) produces better steam distribution than the arrangement in subparagraph (d), and the arrangements in subparagraphs (b) and (c) produce steam distribution comparable to the arrangement in subparagraph (a)." The Court finds that this is not an adequate response to the interrogatory and Sunbeam will be required to give a more responsive answer.

Interrogatory 18 inquires and requests Sunbeam to quote from the specifications of the Barnas patent the variable factors which govern the "center of gravity" in the upended iron in the Barnas patent. Sunbeam's answer in substance was that there were no variable factors discussed in the specification of the Barnas patent. This answer is responsive to the interrogatory and no further answer need be given.

Similarly, Interrogatory 22 inquires whether certain adjustments may be made in the sideward stability of the upended iron in the Barnas patent. Sunbeam answered that the sideward stability was not adjustable. This answer is responsive to the interrogatory and need not be answered further.

Interrogatory 32 asks for the definition of the term "rapidly" used in a section of the specification of the Gronwick I patent. In response Sunbeam referred to the Gronwick I patent, col. 2, ll. 36–40 which repeated the use of the term "rapidly". The quoted language fails to

define the term and Sunbeam will be required to give a responsive quantative answer if possible.

Interrogatory 35 asks for the language in the Gronwick I patent which serves as the basis for the claim that "steam generated therein [the second steam-generating chamber] is forced out through said passageway and discharged from said ports with greater speed when water is pumped into said chambers than when water flows into said first chamber through said valve." In answer Sunbeam referred to the Gronwick I patent, col. 6, ll. 41–57 which in substance indicated that the water is forced into the second steam-generating chamber at a very high velocity, and the resultant buildup of pressure causes a rapid eruption of steam from the corresponding steam discharge ports. This answer appears responsive to the interrogatory and need not be answered further.

Interrogatory 36 inquires into the definition of the term "greater speed" as used in the phrase quoted in Interrogatory 35. In answer Sunbeam referred to the passage quoted in answer to Interrogatory 35 and also indicated that "greater speed" meant a flow greater than the flow of steam from the first steam-generating chamber. This answer is not responsive to the interrogatory and Sunbeam will be required to give a more responsive quantitive answer if possible.

■ The second category of interrogatories to which Scovill seeks to compel answers are those that Sunbeam refused to answer on the ground that the answers sought would be speculative in nature. However, an interrogatory is not objectionable merely because it inquires into the opinion, conclusion and contentions of the opposing party. The standard was ably stated by Judge Hincks in Taylor v. Sound Steamship Lines, 100 F.Supp. 388, 389 (D.Conn.1951), wherein he stated:

"The applicable test, I think, should not be left to fine-spun distinctions between 'knowledge' and belief based upon information from other sources. Rather, it is the practical test which has been well stated by Professor Moore when he poses the question 'would an answer serve any substantial purpose.' The answer here is 'yes.' The answers might be expected to help the plaintiff to know what proofs were required: it might save him much labor and expense in producing proofs for which there would be no actual need. In other words, the interrogatory, if answered, might refine the actual issue of fact." (Citation omitted).

Consistent with this standard, interrogatories have been allowed which call upon the patentee to interpret the claims of its own patents. See Drake v. Pycope, Inc., 96 F.Supp. 331 (N.D.Ohio 1951); Lee v. Electric Products Co., 37 F.R.D. 42 (N.D.Ohio 1963). In addition, in 1970, Rule 33(b), F.R.Civ.P., was amended to provide that "an interrogatory otherwise proper is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact. . . ."

With the foregoing in mind, the Court will now address itself to the individual interrogatories.

■ Interrogatory 15 inquires whether Sunbeam contends that the Vieceli I patent is the first to disclose certain arrangement features of the steam discharge plates in the sole plate of a steam iron. An answer to this question would enable Scovill to determine the extent of proof required. Therefore, Sunbeam will be required to make a responsive answer. Similarly, the answers to Interrogatories 19 and 20, which ask for certain stability contentions of Sunbeam with regard to the Barnas patent, Interrogatory 41, which asks for Sunbeam's contention as to the factors causing varying steam flow velocities through various steam discharge ports on the Gronwick I patent, Interrogatories 42

and 43, which inquire into the extent of Claim 30 of the Gronwick I patent, and Interrogatory 49, which inquires into the extent of Claim 1 of the Gronwick II patent, will enable Scovill to determine the extent of proof required, so that Sunbeam will be required to make a responsive answer to these interrogatories also.

 Interrogatories 27, 28, 29, and 30 ask Sunbeam to make certain comparisons between the Gronwick II patent and the Marvin United States Patent 2,700,236 ("Marvin patent"), and Interrogatories 44 and 45 ask Sunbeam to make certain comparisons between the Gronwick I patent and the Maykemper United States Patent 2,741,044 ("Maykemper patent"). Neither the Marvin patent nor the Maykemper patent were cited as prior art by the Gronwick I patent. Sunbeam cannot be required to compare one of its patents with those of a great many others. See Empire Scientific Corp. v. Pickering & Co., Inc., 44 F.R.D. 5, 7 (E.D.N.Y.1968). While the instant interrogatories only ask for a comparison with two other patents, there is no guarantee that subsequent sets of interrogatories will not be propounded asking for other comparisons. To insure against burdensome inquiries, Sunbeam will not be required to respond to these interrogatories unless or until there is some assurance from Scovill that the number of comparisons ultimately sought will be limited in number.

### ORDER

From the reasons stated above, it is ORDERED (1) that the motion of Sunbeam Corporation to transfer is hereby denied, and (2) that the motion of Scovill Manufacturing Company to compel more responsive answers to interrogatories is hereby granted to the extent that Sunbeam shall file within 30 days from the date hereof more responsive answers to Interrogatories 12, 13, 14, 15, 19, 20, 32, 36, 41, 42, 43 and 49 of Scovill's first set of interrogatories.