## COSDEN OIL & CHEMICAL COMPANY, Plaintiff,

v.

## FOSTER GRANT CO., INC., Defendant.

### Civ. A. No. 76–37.

United States District Court,
D. Delaware.

May 26, 1977.

---

James M. Tunnell, Jr., and Douglas E. Whitney, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., William D. Harris, and Roger C. Clapp, of Richards, Harris & Medlock, Dallas, Tex., for plaintiff.

Edmund D. Lyons, of Morris, James, Hitchens & Williams, Wilmington, Del., Joseph A. DeGrandi, of Beveridge, DeGrandi, Kline & Lunsford, Washington, D. C., for defendant.

STAPLETON, District Judge:

Plaintiff Cosden Oil and Chemical Company (hereinafter "Cosden") has sued defendant Foster Grant Co., Inc. (hereinafter "Foster Grant") pursuant to 28 U.S.C.

§§ 2201 and 2202 for a declaration that defendant's United States Patent No. 3,868,434 (hereinafter " '434 patent") entitled "Polymer Composition and Process" is invalid and unenforceable and that plaintiff has not committed acts of infringement of the '434 patent. Subsequent to the filing of this complaint on January 21, 1976, Foster Grant obtained a second, related patent, United States Patent No. 3,996,311 (hereinafter " '311 patent"). Foster Grant obtained the '311 patent on December 7, 1976 and on that same day filed a suit in the United States District Court for the Northern District of Texas, Dallas Division, against Cosden and two of its customers alleging infringement of the '311 patent. On December 10, 1976, Cosden filed an amended complaint in the action at bar seeking a declaration that the '311 patent is invalid and not infringed by Cosden.

Foster Grant has moved to strike the amendment to the complaint on grounds that the subject matter of the amendment arose subsequent to the filing of the original complaint and that, therefore, under Rule 15 of the Federal Rules of Civil Procedure only the filing of a supplemental complaint, requiring the Court's approval, would be proper. It has also moved to dismiss the original complaint for lack of jurisdiction in that no justiciable controversy between the parties existed at the time the complaint was filed.

Cosden has moved for a temporary injunction to prevent prosecution of the second-filed Dallas suit during the pendency of this action. It has also moved for leave to file the amended complaint as a supplementary complaint in the event defendant's motion to strike is granted. All motions have now been fully briefed and argued and both sides have submitted affidavits and deposition testimony in support of their respective positions.

## I. FOSTER GRANT'S MOTION TO DISMISS THE ORIGINAL COMPLAINT.

■ Suit cannot be brought under the Declaratory Judgment Act absent a controversy between adverse parties which is both real and immediate. · *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941); *Simmonds Aerocessories v. Elastic Stop Nut Corp.*, 257 F.2d 485 (3rd Cir. 1958); *Polaroid Corp. v. Berkey Photo, Inc.*, 425 F.Supp. 605 (D.Del. 1976); *Japan Gas Lighter Assn. v. Ronson Corp.*, 257 F.Supp. 219 (D.N.J.1966). In the context of a suit for declaration of patent invalidity and non-infringement, this means that the plaintiff must demonstrate conduct on the part of the owner giving rise to a "reasonable apprehension" that the owner will ultimately litigate to enforce his rights against the plaintiff. *Japan Gas Lighter Assn. v. Ronson Corp.*, supra. *See also Polaroid Corp. v. Berkey Photo, Inc.*, supra. No explicit threat of litigation need be made by the patent owner to give rise to such reasonable apprehension. *Simmonds Aerocessories v. Elastic Stop Nut Corp.*, supra; *Dewey & Almy Chem. Co. v. American Anode, Inc.*, 137 F.2d 68 (3rd Cir. 1943), cert. denied 320 U.S. 761, 64 S.Ct. 70, 88 L.Ed. 454 (1943); *Polaroid Corp. v. Berkey Photo, Inc.*, supra. It suffices if the threat of litigation can be implied from words or deeds of the patent owner or from plaintiff's knowledge that the patent owner asserts that plaintiff's practices infringe the patent. *Simmonds Aerocessories v. Elastic Stop Nut Corp.*, supra; *Polaroid Corp. v. Berkey Photo, Inc.*, supra; *Thiokol Chemical Corp. v. Burlington Industries, Inc.*, 319 F.Supp. 218 (D.Del.1970), affirmed with instructions on other grounds, 448 F.2d 1328 (3rd Cir. 1971), cert. denied, 404 U.S. 1019, 92 S.Ct. 684, 30 L.Ed.2d 662 (1972).

■ I agree with defendant that the mere offer of a license, without more, cannot be deemed to create a reasonable apprehension of litigation on the part of plaintiff. *Alamo Refining Co. v. Shell Development Co.*, 99 F.Supp. 790 (D.Del.1951). If that were all that occurred here, I could not find a justiciable controversy and would grant defendant's motion to dismiss. But the fact that Foster Grant offered a license to Cosden for the processes claimed in the '434 patent is only one of several circumstances

from which Cosden could draw the conclusion that Foster Grant intended to enforce what it considered to be its rights under the '434 patent. In examining all of the circumstances, as I must, *Maryland Casualty Co. v. Pacific Coal & Oil Co., supra*, I conclude that Cosden did reasonably apprehend litigation by Foster Grant to enforce those rights.

Cosden and Foster Grant are competitors in the high impact polystyrene industry and over the years Foster Grant has obtained samples of Cosden products for the purpose of analyzing their content. (Sinn Dep. 7). Cosden uses a particular kind of polybutadiene rubber sold by Firestone under the trademark "Diene" in its high impact polystyrene (Cheairs Dep. 79–80, 95) and Leroy Sinn, patent counsel for Foster Grant was aware, prior to this suit's being filed, of speculation in the industry that Cosden did in fact use Firestone's Diene rubber. (Sinn Dep. 16–19). Foster Grant believes and has asserted in the past that Firestone's Diene rubber has "cis-trans and vinyl contents as recited in the claims" of the '434 patent. (Sinn Dep. 70; see also Sinn Dep. 69, 77).

In 1975, prior to Cosden's institution of this suit, Foster Grant entered into negotiations with United States Steel (hereinafter "Steel") with respect to licensing the high impact polystyrene process which is the subject matter of the '434 patent. (Exh. B, C, D, E to Cheairs affidavit). At the time of these negotiations, Steel was using the Cosden high impact polystyrene technology as a licensee of Cosden, and had an agreement with Cosden under the license that Cosden would indemnify Steel and hold it harmless up to a stated amount in the event Steel was charged with infringement for use of the Cosden technology. (Exh. A to Cheairs affidavit). By the time of the Foster Grant-Steel negotiations in the summer of 1975, Foster Grant knew that Steel was a Cosden licensee, knew that Steel was using the Cosden high impact polystyrene technology and knew of the indemnity agreement between Steel and Cosden. (Sinn Dep. 99–101).

One of the provisions sought by Foster Grant in the licensing agreement with Steel was the payment of "past damages" based on sales from February 25, 1975, the date of issuance of the '434 patent, and the date of the agreement. By implication this amounted to a claim by Foster Grant that Steel, in its use of the Cosden technology, had been infringing the '434 patent and that Foster Grant intended to enforce its rights under that patent. That is how Steel perceived Foster Grant's position. (Cheairs Dep. 13, 20). It informed Cosden of Foster Grant's demands and of its concern about being sued for infringement, and sought to renegotiate its indemnity agreement with Cosden. (Exh. B and C to Cheairs affidavit). There is no reason to believe that Steel's fear was fanciful. Sinn acknowledged in his deposition that at the time of the licensing discussions with Steel, Foster Grant fully intended to collect damages for past infringement. (Sinn Dep. 134, 135).

That same year the file wrapper from the '434 patent was published. It contained an affidavit of David Markowitz, President of Foster Grant, dated November 20, 1973, in which he stated his conservative estimate that 90 percent or more of the commercial polystyrene produced in the United States in 1972 was covered by the claims of what became the '434 patent. (Exh. 3 to Markowitz Dep.). It is difficult to escape the conclusion that this charge of infringement was directed at least in part at Cosden in view of Cosden's claimed position as the third largest producer of the products in question. (Sinn Dep. 48).

It was against this background that Foster Grant wrote to Cosden in November, 1975, offering Cosden a license and including in that offer the requirement that Cosden make a downpayment of $50,000 which would be "fully creditable against past damages". (Exh. F to Cheairs affidavits). That letter, serving as it did as a culmination of general claims of industry-wide infringement as well as specific claims of infringement against a Cosden licensee using Cosden technology, was probably sufficient to create in Cosden a reasonable apprehension of litigation by Foster Grant.

But any doubts Cosden may have had on this point were confirmed in a meeting held in mid-January of 1976 between Foster Grant and Cosden to discuss Foster Grant's licensing offer. The substance of the meeting was recorded in notes taken by Joseph A. DeGrandi, outside patent counsel to Foster Grant.

Litigation attorneys for both sides attended that meeting. (Cheairs Dep. 70, 76; Sinn Dep. 158; p. 1 of DeGrandi notes). After lunch discussion turned to Foster Grant's construction of the '434 patent's claims. Attention focused on three elements of high impact polystyrene technology which would be at the center of any dispute as to whether the teachings of the '434 patent were being practiced. Among other things, Sinn advised Cosden of Foster Grant's position with respect to Firestone's Diene rubber and stated that Foster Grant had "no information that Cosden is not using that material." (p. 6 of DeGrandi notes). In context, Sinn's comments on the scope of the '434 patent were understandably taken as a claim that Cosden was infringing and that Cosden had the choice between taking a license or being sued.

I accept Sinn's testimony that he sought to avoid a direct threat of suit at this conference. But it is apparent from the subject matter of the conference as well as the background to that conference, that more was going on than simply a discussion of a licensing offer made by Foster Grant to Cosden. Overall, Foster Grant's conduct led Cosden to reasonably apprehend suit by Foster Grant for infringement of the '434 patent. Indeed, at his deposition Sinn admitted that prior to the January meeting Foster Grant had in fact considered suing Cosden for infringement. (Sinn Dep. 156). Cosden's fears were not at all unfounded.

To paraphrase *Muller v. Olin Mathieson Chem. Corp.*, 404 F.2d 501 at 505 (2nd Cir. 1968):

> [Foster Grant] put [Cosden] in a position where [Cosden] must either abandon [its high-impact polystyrene] or . . . must run the risk of being liable to [Fos-

ter Grant] for potential damages *whenever [Foster Grant] should see fit to sue* for infringement. . . . To deny that a "case or controversy" exists in this situation is to "ignore the realities of business life". (Emphasis added)

I conclude, therefore, that defendant's motion to dismiss the original complaint should be denied.

## II. COSDEN'S MOTION FOR TEMPORARY INJUNCTION AGAINST THE DALLAS SUIT.

The similarity between the '434 patent and the '311 patent and the intimate relationship between the respective file histories of these two patents leaves no question in my mind that the controversy surrounding the '311 patent is part and parcel of the controversy surrounding the '434 patent. As such, under the first-filed doctrine enunciated by the Third Circuit Court of Appeals in *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925 (3rd Cir. 1941), I have no choice but to enjoin the Dallas suit pending disposition of the claims here. Cosden is entitled to be free from the "vexation of subsequent litigation over the same subject matter" 122 F.2d at 930, and the courts are entitled to be free from the waste and inefficiency involved in duplicative litigation. *See also Mann Manufacturing, Inc. v. Hortex, Inc.*, 439 F.2d 403 (5th Cir. 1971); *Ultronic Systems Corp. v. Ultronix, Inc.*, 217 F.Supp. 89 (D.Del.1963).

## III. COSDEN'S MOTION FOR LEAVE TO FILE A SUPPLEMENTAL COMPLAINT.

Regardless of whether it is properly termed a supplemental or amended pleading, I conclude, for much the same reasons that I found litigation concerning both patents to be part of the same controversy, that Cosden is entitled to add to its original complaint a claim for declaration of invalidity and noninfringement of the '311 patent. Rule 15 of the Federal Rules of Civil Procedure.

Submit order.