**HOOKER CHEMICALS & PLASTICS CORP., Plaintiff,**

v.

**DIAMOND SHAMROCK CORPORATION, Defendant.**

**Civ–79–714.**

United States District Court, W. D. New York.

June 23, 1980.

Phillips, Lytle, Hitchcock, Blaine & Huber, by Paul B. Zuydhoek, Buffalo, N. Y., for plaintiff; Kenyon & Kenyon, by Hugh A. Chapin, Paul Lempel, New York City, and Michael J. Rudick, Niagara Falls, N. Y., of counsel.

Christel, Bean & Linihan, by Edwin T. Bean, Jr., Buffalo, N. Y., for defendant; Morgan, Finnegan, Pine, Foley & Lee, by John Foley, William S. Feiler, New York City, and John P. Hazard, (Senior Patent Counsel) Painesville, Ohio, of counsel.

CURTIN, Chief Judge.

Complexity inheres in patent cases. This one is no exception. Without recounting all of the relevant facts, I shall endeavor to explain.

At stake is the validity of seven patents: United States Letters Patent Nos. 3,591,-483; 3,674,676; 3,707,454; 3,793,163; 3,928,-166; 4,025,405; and 4,192,725. [Hereinafter patents will be referred to by their last three digits.] They concern electrolysis, the process by which water or brine is rendered into its constituent parts. The original complaint of Hooker Chemicals & Plastics Corporation ["Hooker"] sought a declaratory judgment that six Diamond Shamrock Corporation ["Diamond"] patents are void.

Two of the patents, '163 and '405, concern membrane cell technology; the other four, '483, '676, '454, and '166, concern non-membrane, largely diaphragm-related, cell technology. The seventh patent, '725, was not part of the original complaint and is a so-called broad-based membrane "process" patent.

A chronology of the legal events is necessary to understand the motions before the court. Plaintiffs Hooker and Anode Products, Inc. ["Anode"] filed this action on September 26, 1979 in the Western District of New York against Diamond and Electrode Corporation ["Electrode"]. Plaintiffs sought to have the six patents in the original complaint declared void.[1] Diamond responded on November 23 by moving to transfer the entire case to the District Court for the Northern District of Ohio, Eastern Division, which sits in Cleveland. On March 11, 1980 the Patent and Trademark Office issued patent '725 to Diamond. Within hours, on the same business day, in the Eastern District of Oklahoma, in Muskogee, Diamond commenced a declaratory judgment action to uphold the validity of its new patent and to enjoin alleged threatened infringement by Hooker, as well as by Hooker's Muskogee-based clients, Fort Howard Paper Company ["Fort Howard"] and Muskogee Industrial Trust ["Trust"]. E. I. DuPont de Nemours and Company ["DuPont"] filed its own declaratory judgment action in the District of Delaware on March 27 in order to strike down the new patent and to obtain a declaration of noninfringement by DuPont's direct and ultimate customers, Hooker, Fort Howard, and the Trust. Back in Buffalo, on March 31, 1980, Hooker filed a document titled Second Amended Complaint, purporting to add the '725 patent to the six already challenged and moving to enjoin Diamond from pursuing the Oklahoma action. No motion was made in the Oklahoma court or in this court with respect to the Delaware action.

Diamond, on April 3, 1980, amended its complaint in its Oklahoma action to include the two other membrane cell technology patents, '163 and '405. Subsequently, on April 21, 1980, Diamond modified its original motion in this court. Instead of moving to transfer this entire case to Ohio, Diamond moved to sever and transfer the membrane cell technology patents part of the case to Oklahoma and the remaining non-membrane patents to Ohio. The court is not aware of any amendments to the complaint in the Delaware action, nor is DuPont at present a party to this litigation. However, Diamond has moved the Oklahoma court to enjoin DuPont from pursuing its Delaware action.

At oral argument, on May 1, 1980, the court was given to understand that all of the parties to both the Delaware and Oklahoma actions had stipulated to withhold their motions in those courts pending this court's decision in the instant proceeding.

Although there has been much procedural maneuvering, there are three simple questions before the court:

1. Defendant's motion to sever and transfer the membrane cell technology patents to the Eastern District of Oklahoma and the non-membrane patents to the Northern District of Ohio, Eastern Division; or to stay the instant action pending termination of the already-filed Oklahoma action.

2. Plaintiff's motion for a preliminary injunction to enjoin defendant from pursuing its pending action in the Eastern District of Oklahoma.

3. Defendant's opposition to plaintiff's filing of its second amended complaint.

In other words, Diamond wants to move the membrane cell litigation to Oklahoma and the non-membrane diaphragm patent litigation to Ohio. Hooker wants to amend its complaint and to enjoin Diamond from pursuing the Oklahoma case.

---

1. The present parties to the action subsequently agreed to drop plaintiff Anode and defendant Electrode from the litigation. On December 4, 1979 an amended complaint was filed deleting them. This is significant because Hooker claims that this amended complaint should not be counted for purposes of deciding whether it could file a subsequent "Second Amended Complaint" as a matter of right under Fed.R. Civ.P. 15(a).

At the outset, it must be understood that there are very different criteria for granting the two motions. Under 28 U.S.C. § 1404(a), Diamond has the burden of convincing this court that its motion to sever and transfer the litigation to two separate venues will promote the convenience of the parties and witnesses, as well as be in the interest of justice. Wright, Miller & Cooper, *Federal Practice and Procedure*: Change of venue § 3848 at 244; *Scovill Mfg. Co. v. Sunbeam Corp.*, 357 F.Supp. 943, 946 (D.Del.1973). Yet, the burden cannot be too great as plaintiff's choice of forum is but one factor of many which must be weighed. *Norwood v. Kirkpatrick*, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). Diamond has attempted to carry its burden by arguing that the membrane cell technology patents should be transferred to Oklahoma because Diamond filed its action based on the '725 patent there first. Diamond's argument for transferring the non-membrane patents to Ohio is that trial there will be more convenient for all concerned.

Hooker, on the other hand, has no similar burden to overcome. Because the first amended complaint was the result of a stipulation among the parties, and because a party is entitled to amend its complaint once as a matter of right before an answer is served, Fed.R.Civ.P. 15(a), Hooker argues it may file its Second Amended Complaint as a matter of right. Hooker also argues the complaint would automatically be entitled to relation back because it arose out of the same "transaction" as the original complaint. Fed.R.Civ.P. 15(c). Under the first-to-file rule in this circuit, Hooker argues it would then be entitled to a preliminary injunction against Diamond in order to prevent multiple litigation. *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed. 455 (1978); *Mattel, Inc. v. Louis Marx & Co.*, 353 F.2d 421 (2d Cir. 1965); *Remington Products Corp. v. American Aerovap, Inc.*, 192 F.2d 872 (2d Cir. 1951); *see also, Kerotest Mfg. Co. v. C-O-Two Fire Equip-*

ment Co., 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952).

I

Defendant's motion to transfer the four non-membrane patents to Ohio can be resolved with dispatch.

Diamond points to the following facts in support of its motion to transfer to Cleveland:

1. Divisional headquarters of Diamond's Electrolytic Systems Division is located in Chardon, Ohio. The people who control Diamond's electrolysis operations are there.
2. Files concerning research and development on the patents are there.
3. Diamond has no records or witnesses in New York.
4. Of the seven inventors, the presently known addresses of four are in Ohio, while the other three are in Texas, Tennessee, and Connecticut.
5. All four of the attorneys who prosecuted the patents are in Ohio.
6. The court calendar is clearer in Ohio.

Hooker defends its selection of Buffalo by pointing to the following:

1. Hooker's Industrial Chemicals Group headquarters and principal place of business are in Niagara Falls, New York.
2. Files concerning the allegedly infringing Hooker cells are there.
3. Manufacturing facilities of some allegedly infringing electrolytic cells are in Niagara Falls.
4. Nine of eleven potential witnesses live in Niagara Falls. The other two live in California and Texas.
5. Hooker's witnesses would have to travel for a longer period if trial were in Cleveland than Diamond's would have to travel if trial were in Buffalo. This is because Diamond's plant is forty miles east of Cleveland, on the way to Buffalo.
6. In complex litigation, such as this patent case, nationwide median delay

is 66 months. In this kind of case, the *median delay for all civil cases* in any given district is not relevant.

On balance, the convenience to the parties and the witnesses of trial in either city is about equal. Both have numerous "local" witnesses. While Diamond has its research and development records on the patents in Ohio, Hooker has its records and facility for producing at least some of the accused cells in New York. I cannot say on this record that either group of records and witnesses will not be useful at trial. While it is undoubtedly true that this kind of complex case will be a burden on whichever court it is inflicted, this factor alone cannot tempt this court to abuse its discretion and shirk from its duties. *Kerotest Mfg. Co. v. C–O–Two Co., supra*, at 185, 72 S.Ct. at 222. The interests of justice do not argue for transfer. Moreover, the distances involved here are not great; approximately 135 miles separate the two cities.

■ The only argument which must give this court some pause is the claim that little weight should be given to plaintiff's choice of forum due to its "unclean hands." Defendant asserts that its representatives met with plaintiff in Toronto, Ontario on September 26, 1979 to discuss expanded licensing under the patents-in-suit and "other matters." Defendant objects to the fact that unbeknownst to it, on the very same day in Buffalo, plaintiff's attorneys commenced this lawsuit.

This equitable argument must be rejected. Defendant has not shown plaintiff has "unclean hands" as long as defendant makes no claim that plaintiff made false representations. Diamond itself appears to have concluded the meeting by threatening legal action against Hooker.[2] The fact that

Hooker filed first, while continuing to negotiate, could simply be the mark of a prudent lawyer. The parties here are industrial giants, both endowed with substantial means and able counsel. They cannot be heard to cry foul when one party exercises its right to sue first. *See generally, Scovill Mfg. Co. v. Sunbeam, supra*, at 946.

II

Defendant's motion to transfer the membrane cell technology patents for trial to Muskogee is not based primarily on a convenience rationale. Defendant argues that the membrane technology patents should be litigated in Oklahoma because Diamond filed its declaratory judgment action regarding the '725 patent 19 days before Hooker filed its second amended complaint, which put the '725 patent into this case. Hooker argues that the subject matter of the '725 patent is "part and parcel" of the instant litigation and would have been included in the original complaint if the patent had been issued when the litigation was begun. Hooker also argues that there are no "special circumstances" preventing application of the first-to-file rule in this case.

The case before the court is very similar to *Cosden Oil & Chemical Co. v. Foster Grant Co.*, 432 F.Supp. 956 (D.Del.1977), aff'd sub nom. mem. *Cosden Oil & Chemical Co. v. American Hoechs Corp.*, 577 F.2d 725 (3d Cir. 1978). In that case Cosden moved for a declaratory judgment that a Foster Grant patent was invalid and that Cosden had not committed acts of infringement. A second patent was subsequently issued to Foster Grant. The second patent involved a similar process, contained similar claims, and was patented by Foster Grant, a commercial competitor. The patents had been the subject of extensive negotiations be-

2. Without setting forth all of the pertinent facts, it would appear that this essentially undenied exchange of words at the conclusion of the Toronto meeting makes clear that the controversy between the parties was both real and immediate. Given the fundamentally conflicting positions adopted by the parties in their pleadings and the continuing construction of Fort Howard's plant, my conclusion here does not change because of Diamond's claim that it

was "provoked." I find that Hooker had the requisite "reasonable apprehension" needed for bringing this patent case under the Declaratory Judgment Act. 28 U.S.C. §§ 2201, 2202. *See generally, Tubeco, Inc. v. Crippen Pipe Fabrication Corp.*, 402 F.Supp. 838, 844 (E.D.N.Y. 1975), aff'd mem., 538 F.2d 314 (2d Cir. 1976); *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941).

tween the parties. On the same day that the second patent was issued, Foster Grant filed an infringement action against Cosden in another court. Three days later Cosden amended its complaint in the original action to include the later-issued patent and sought to enjoin Foster Grant from prosecuting its second-filed action. Foster Grant opposed the amendment on the grounds a supplemental complaint was required, necessitating leave of the court.

The court determined that the second patent was "part and parcel" of the controversy surrounding the earlier issued patent, and allowed the plaintiff's motion regardless of whether it was properly termed a supplemental or an amended complaint. In a well-reasoned opinion, Judge Stapleton also concluded:

> As such, under the first-filed doctrine enunciated by the Third Circuit Court of Appeals in *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925 (3rd Cir. 1941), I have no choice but to enjoin the Dallas suit [second suit] pending disposition of the claims here. Cosden is entitled to be free from the "vexation of subsequent litigation over the same subject matter" 122 F.2d at 930, and the courts are entitled to be free from the waste and inefficiency involved in duplicative litigation.

432 F.Supp. at 960.

▮▮ It is undoubtedly true that Hooker would have included the March 11, 1980 '725 patent in the original complaint if it had been issued on September 26, 1979, when this litigation began. The '725 patent is itself denominated a "continuation" of the '405 patent. Both concern the same technology. Both arose from a common application filed in 1971. Both contain claims which are very similar, if not completely identical. Nor is defendant's cause strengthened by its having brought the other membrane cell technology patents, '163 and '405, into the Oklahoma suit. In short, I find Hooker's "Second Amended Complaint" to be "part and parcel" of the same

controversy as the original complaint, *Cosden Oil & Chemical Co. v. Foster Grant Co., supra*, and therefore entitled to relation back under Rule 15(c).

Having concluded that the "Second Amended Complaint" is part and parcel of the earlier-begun controversy, it is clear, that, *a fortiori*, the relationship between the two pleadings is close enough that plaintiff should be allowed to file his "Second Amended Complaint," whether by leave of the court or by right. The language of the Federal Rules makes clear that the consent of the court for the parties to amend their pleadings shall be freely given "when justice so requires." At oral argument defendant even conceded that the "Second Amended Complaint" "probably should be entered." Regardless of whether it is properly termed an amended complaint of right or a complaint requiring leave of the court under Rule 15(a), I conclude, for much the same reasons that I find the litigation concerning both '725 and '405 patents to be part of the same controversy, that Hooker is entitled to add to its original complaint a claim for declaration of invalidity and non-infringement of the '725 patent. *Cosden Oil & Chemical Co. v. Foster Grant Co., supra*, at 960.

Having concluded that the Second Amended Complaint should be filed and that it is entitled to relation back, we now turn our attention to discerning whether there are any special circumstances which would justify an exception to the first-to-file rule. I find there are none.

Defendant argues that neither Fort Howard nor the Trust, defendants in the Oklahoma action, are amenable to jurisdiction in the Western District of New York, and that the actual infringement will take place in Muskogee, Oklahoma. This is true as far as it goes. However, in either forum Hooker will be the real party in interest, obligated to defend and indemnify for the apparatus and any technology which it sold to Fort Howard and the Trust.[3] *William Gluckin &*

---

3. Given Hooker's representations during oral argument to this effect, Hooker would have a difficult time defending against the collateral

estoppel effects of a decision of this court in any future related action. Surely Hooker's repeated and unambiguous assertions that it

*Co. v. International Playtex Corp.*, 407 F.2d 177, 179 (2d Cir. 1969). In addition, it is likely that the collateral estoppel effects of any judgment here will preclude any extensive redundant re-litigation in Oklahoma, or in any other venues where there might be an allegedly infringing plant built. Under these circumstances, Fort Howard and the Trust are so closely related to Hooker that their absence from the Western District of New York will not significantly affect the course of the litigation. Comprehensive disposition of the litigation can be obtained here. *Kerotest Mfg. Co. v. C–O–Two Co., supra.*

The convenience of having trial in Buffalo rather than in Muskogee also argues against transfer of the membrane cell technology patents litigation. The plans for constructing the Muskogee plant were drafted and prepared by Hooker employees at its Niagara Falls headquarters. For purposes of this sort of litigation, it is likely that proximity to the construction plans will be more useful to the trial court and the parties than actually litigating the cause in the shadow of the as yet incomplete facility, on the tenuous theory that the court might want to inspect it at some future date. In addition, I am given to understand that transportation to Muskogee, Oklahoma would be a somewhat more onerous undertaking for the parties and their New York trial counsel than transportation to Buffalo, New York.

■ Perhaps most important, some of the witnesses necessary to the membrane cell technology patent litigation are also likely to be necessary to litigating the non-membrane patents. Hooker called our attention

at oral argument, for example, to the fact that at least one individual, Kevin J. O'Leary, is an inventor of both membrane and non-membrane patents. The defendant's contentions concerning the convenience to other witnesses of trial in Muskogee must also be questioned. This is because, in connection with its original motion to transfer the entire litigation to Cleveland, Diamond submitted affidavits that many of its witnesses were in the Cleveland area, which, of course, is closer to Buffalo than Muskogee.[4] In sum, the defendant has failed to carry its burden of convincing this court that either the convenience of the witnesses or the interests of justice will be furthered so significantly as to constitute a "special circumstance" which would justify setting aside the first-to-file rule.

■ As I have already determined that the litigation concerning non-membrane patents should not be transferred to Cleveland, the fact that there is overlap among the witnesses argues both against severance, *Wyndham Associates v. Bintliff*, 398 F.2d 614 (2d Cir. 1968), *cert. denied*, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968), and against transfer of part of this case to Muskogee. Since all seven are electrolysis patents, concern similar subject matter, and since at least some of the same witnesses will be in both the membrane and non-membrane litigation, I conclude the patents should be tried together in order to maximize judicial economy.[5] *Cosden Oil & Chemical Co. v. Foster Grant, supra*, at 960.

### III

■ Having determined that all seven electrolysis patents should be litigated in

would be the real party in interest in any subsequent Oklahoma infringement action would protect Diamond in the unlikely event of an attempt to retract those words at some future date. *See generally, Wallace & Tiernan, Inc. v. General Electric Co.*, 291 F.Supp. 217, 220 (S.D. N.Y.1968).

**4.** The court notes with interest that in defendant's original motion to transfer this entire litigation to Cleveland, its primary justification was the convenience of the parties and witnesses.

**5.** The defendant's alternative proposal, that of staying the instant litigation pending determination of the Oklahoma action would potentially be the worst of all possible worlds; litigation might then ensue in violation of the first-to-file rule successively in Muskogee, Cleveland, and Buffalo. Having determined that all of the real parties in interest are before this court and that the instant case should not be sent to Oklahoma for trial, no substantial reason remains for this court staying its hand.

the same forum, that this forum is at least as convenient as the proffered alternatives, and that the instant litigation was filed first, the Second Circuit first-to-file rule compels me to enjoin defendant from pursuing its Oklahoma complaint. *Mattel, Inc. v. Louis Marx & Co., supra,* at 423; *Telephonics Corp. v. Lindly & Co.,* 291 F.2d 445 (2d Cir. 1961). Hooker is entitled to be free from the vexation of subsequent litigation over the same subject matter and the courts are entitled to be free from the waste of duplicative litigation. *Cosden Oil & Chemical Co. v. Foster Grant, supra,* at 960.

### ORDER

Defendant's motion to sever and transfer, or, in the alternative, to stay this action, is denied.

A preliminary injunction to enjoin defendant from pursuing its action in the Eastern District of Oklahoma pending disposition of the claims here is granted.

So ordered.