475 So.2d 1063 (1985)
MTU OF NORTH AMERICA, INC., and MTU of Friedrichshafen
v.
RAVEN MARINE, INC., Transocean Marine, Inc. and Bernard Favret.
No. 85-CC-0460.
Supreme Court of Louisiana.
September 10, 1985.
Rehearing Denied October 31, 1985.
*1066 Boris F. Navratil, Breazeale, Sachse & Wilson, Baton Rouge, for plaintiff-applicant.
John H. Weinstein, Baton Rouge, B.J. Rawls, Morgan City, for respondents.
DENNIS, Justice.
In this review of a discovery order, the issue is whether the trial court abused its discretion by compelling employees of a party to answer questions objected to by its attorney during two separate depositions in West Germany and Texas, by requiring the retaking of both depositions for this purpose, or by charging costs of the motion and the additional depositions, including travel expenses and attorney's fees, to the losing party. We affirm in part and reverse in part. The trial court did not abuse its discretion in compelling answers to the questions because the party opposing the motion failed to carry its burden of showing, as it contended, that one line of questioning was irrelevant and that the other would cause it undue burden and expense. Because the party whose conduct necessitated the motion had not disobeyed a preexisting order compelling such discovery, however, under La.C.C.P. art. 1469 that party may be charged with only the reasonable expenses and attorney's fees incurred in obtaining the order.
Plaintiffs, MTU of Friedrichshafen and MTU of North America, Inc., manufacturer and distributor of marine diesel engines made in West Germany, filed suit to collect from defendants $1,696,526.79 in American dollars and $1,630,837.44 in German deutsche marks, amounts allegedly due on the sale, maintenance and repair of twenty engines. Defendants, Raven Marine, Inc., Transocean Marine, Inc. and Bernard Favret, reconvened asserting that plaintiffs had breached warranties and that the engines contained redhibitory defects. In their answer to the reconventional demand, plaintiffs claim that any such defects were caused solely by defendants' negligence or misuse of the engines.
The depositions in question were taken pursuant to notice in Friedrichshafen, West Germany and Sugarland, Texas. During each deposition counsel for MTU of Friedrichshafen and MTU of North America instructed an employee of the diesel engine company either to desist from answering questions or to refuse to compile information from his files concerning a particular subject matter.
During a deposition of Dr. Hans Dinger, MTU of Friedrichshafen's deputy chairman and director of research and testing, taken at Friedrichshafen, West Germany, the attorney for Raven, Transocean and Favret asked a series of questions in an attempt to discover evidence tending to show that MTU of Friedrichshafen had specially warranted the engines. Dr. Dinger testified that special warranties had been given by his company in connection with engines sold several years earlier but that he was not responsible for warranties and could not recall having seen the exact language of them. He stated that the wording and granting of special warranties was the responsibility of the manager in charge of sales who is a member of the board of managers, and that this manager had authority either to make such a decision on his own or to submit a proposed special warranty to the board of managers for approval.
When Dr. Dinger testified that he could not remember whether a particular special warranty provision had been submitted to the board, he was asked what he would have done as a member and as director of research and testing had such a warranty been proposed to the board. Dr. Dinger refused to answer on the grounds that the question sought irrelevant information. MTU of Friedrichshafen's counsel objected to the question as being impossible to answer and instructed Dr. Dinger not to answer any more questions about the special warranty.
During a deposition of Mr. Heinz to Roxel, MTU of North America's service manager, taken in Sugarland, Texas, the attorney for Raven et al. attempted to discover evidence exculpating his clients from any negligence *1067 or misuse in their operation or maintenance of the engines. In connection with one engine, Mr. to Roxel was asked to refer to his records and state whether there was any indication that Transocean Marine did not carry out scheduled maintenance properly. Counsel for MTU of North America instructed Mr. to Roxel not to examine his files for this purpose on the ground that the witness could be required to answer questions only and not to perform work for the adverse party.
Defendants, Raven, et al., moved the trial court to compel discovery. At a hearing on their motion defendants presented evidence of the cost of retaking the depositions in West Germany and Texas. Counsel for MTU of Friedrichshafen and MTU of North America objected to the introduction of evidence and cross examined the witnesses. However, the MTU corporations did not introduce evidence or make a showing independent of the deposition testimony that would justify their employees' refusal to answer the questions.
The trial court ordered the witnesses to answer the questions and that the depositions be retaken for this purpose at plaintiffs' expense, including travel costs and attorney's fees totalling $29,357. The court of appeal denied writs. We granted certiorari, 466 So.2d 456.
After reviewing the record and considering arguments, we conclude that the trial court did not abuse its discretion in compelling discovery but that it fell into error in ordering the losing party to pay more than the reasonable costs of obtaining the order. Accordingly, the trial court's order will be affirmed insofar as it orders the witnesses to answer the questions in depositions to be retaken for that purpose and as it charges the reasonable expenses and attorney's fees incurred in obtaining the order. Otherwise, the trial court order is reversed and set aside.

1. Deposition of Dr. Dinger
Discovery under the Louisiana rules is extremely broad in scope, encompassing any unprivileged matter which is relevant to the action before the court, even if the information requested would not be admissible at trial, provided that it appears reasonably calculated to lead to the discovery of admissible evidence. La.C.C.P. art. 1422. The Louisiana rule governing scope of discovery is identical to the first paragraph of Federal Rule of Civil Procedure 26(b)(1). Accordingly, well reasoned jurisprudence and commentary interpreting and applying the federal rule provide useful precepts in applying La.C.C.P. art. 1422. See Allen v. Smith, 390 So.2d 1300 (La. 1980).
There is nothing in the language of La.C.C.P. art. 1422 to require a decision that the opinions, conclusions or contentions of a party may never be discovered. Instead, the criteria of the rule are whether it is practicable and feasible to answer the inquiry and, if so, whether an answer might expedite the litigation by either narrowing the area of controversy or avoiding unnecessary testimony or providing a lead to evidence. See Moore's Federal Practice par. 26.56[3]; Wright and Miller, Federal Practice & Procedure: Civil § 2167 (1970); McClain v. Mack Trucks, Inc., 85 F.R.D. 53, 59 (D.C.Pa.1979); Scovill Manufacturing Co. v. Sunbeam Corp., 357 F.Supp. 943, 948 (D.C.Del.1973); Luey v. Sterling Drugs, Inc., 240 F.Supp. 632, 636 (D.C. Mich.1965). A hypothetical question makes a tentative assumption in order to draw out and test the knowledge, opinions, conclusions and contentions of the interrogee. The determinative test, therefore, is not the form of the question or whether "fact" or "opinion" is sought, but whether it is practicable to require discovery and whether to do so would serve the purpose of the rules. United States v. Meyer, 398 F.2d 66, 73 (9th Cir.1968); Long, Discovery and Experts Under the Federal Rules of Civil Procedure, 38 F.R.D. 111, 150 (1965).
Applying these precepts, we conclude that the question asked Dr. Dinger was calculated reasonably to lead to admissible evidence. In essence, he was asked to give his opinion or conclusion as to what corporate action he would have advised regarding *1068 a special warranty provision similar to the one which defendants contend was given to them. It was logical to assume that Dr. Dinger, as the senior corporate officer most knowledgeable of product capability, possibly would have been consulted on all special provisions of product warranty. Therefore, although Dr. Dinger testified he was not responsible for warranties and could not recall such a provision having been submitted to the board, the interrogating attorney was entitled reasonably to draw out and test Dr. Dinger's memory, knowledge and conclusions. See Wright & Miller, supra, § 2037 n. 52. The inquiry reasonably could have stirred Dr. Dinger's memory of a forgotten board decision, or uncovered informal practices or discussions tantamount to the formulation of a company policy, or led to discovering occasions in which Dr. Dinger gave informal advice on warranties outside the board room. Any of these avenues would have been germane to whether special warranties had been given with the engines purchased by defendants.
Consequently, the attorney for the MTU corporations erred in sealing off the area of inquiry by instructing Dr. Dinger not to answer the question asked or any further inquiries about the special warranty. Furthermore, the trial judge's apparent conclusion that supplemental depositions should be ordered and that the MTU corporations should pay expenses and attorney's fees incurred in obtaining the order because their opposition to the motion was not substantially justified cannot be characterized as improper. The proper standard of review of a trial judge's choice of discovery sanctions is whether he abused his discretion. Nat. Hockey League v. Met. Hockey Club, Inc., 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976); Moore, supra, par. 3708; Wright & Miller, supra, § 2284; Dorey v. Dorey, 609 F.2d 1128, 1135 (5th Cir.1980); Brown v. McCormick, 608 F.2d 410 (10th Cir.1979); General Dynamics Corp. v. Selb Manufacturing Co., 481 F.2d 1204, 1211 (8th Cir.1973). There was no abuse of discretion here because the cutting off all further inquiry as to the special warranty was clearly uncalled for and only a further deposition can reopen this subject to proper discovery.

2. Deposition of Mr. to Roxel
An attorney clearly is not authorized to terminate a deposition or to dictate the manner and scope of its taking. See Ralston Purina Co. v. McFarland, 550 F.2d 967, 973-74 (4th Cir.1977). If he has objection merely to admissibility, the deponent must answer the question and the objection will be preserved and ruled on when and if the deposition is presented. La.C.C.P. art. 1451; Wright & Miller, supra, § 2113 at 419, n. 22. When a deponent wishes to assert an objection that the question seeks privileged information, his only course is to decline to answer, lest the privilege be destroyed. Eggleston v. Chicago Journeymen Plumbers, Etc., 657 F.2d 890, 902-903 (7th Cir.1981); Moore, supra, par. 37.02[2]. The authorities are divided, however, on whether relevancy is a ground for refusal to answer without seeking court guidance. Moore, supra, paragraphs 30.59 & 37.02; Eggleston, supra, at 903 (refusing to answer irrelevant questions may be justified); International Union of Electrical, Radio, & Machine Workers v. Westinghouse Electric Corp., 91 F.R.D. 277 (D.C.D.C.1981) (objections based merely on irrelevance should be noted and the question answered); W.R. Grace & Co. v. Pullman, Inc., 74 F.R.D. 80 (D.C.Okla. 1977) (objections based on relevancy should be noted on the record and the question answered); Preyer v. United States Lines, Inc., 64 F.R.D. 430 (D.C.Penn.1973) (evidence objected to on the basis of irrelevance shall be taken subject to objections).
At any time during the taking of a deposition, if a party or a deponent believes that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or a party, he may move the court in which the action is pending to stop or limit the scope and manner of the deposition *1069 as provided for under a protective order. La.C.C.P. art. 1444. Under this rule, therefore, upon a showing of good cause, the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more orders which La.C.C.P. art. 1426 specifically lists.
An attorney who attempts to protect a deponent from oppression without seeking a court order does not forfeit the right to request relief in the event his adversary moves the court to compel discovery. If the court denies the motion to compel in whole or in part, it may make such protective order as it would have been empowered to make on a motion made pursuant to La.C.C.P. art. 1426. See La.C.C.P. art. 1469(2).
Nonetheless, La.C.C.P. art. 1469 requires that good cause be shown for a protective order, placing the burden on the party seeking relief to show some plainly adequate reason therefore. There must be a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good cause. The existence of good cause for a protective order is a factual matter to be determined from the nature and character of the information sought weighed in the balance of the factual issues involved and a comparison of the consequential hardships caused by granting or denying the order. Wright & Miller, supra, § 2035; Fed.Proc. Lawyers Ed. § 26.-70; Moore, supra, par. 26.72; Marrese v. Am. Acadamey of Orthopaedic Surgeons, 706 F.2d 1488, 1493 (7th Cir.1983) vacated on other grounds, 726 F.2d 1150 (7th Cir. 1984); Glick v. McKesson & Robbins, Inc., 10 F.R.D. 477, 479 (D.C.Mo.1950).
Plaintiffs, the MTU corporations, made no showing at all in the trial court that good cause for a protective order exists in this case. They failed to point out any particular or specific facts from which a court reasonably could find that a great hardship would result if Mr. to Roxel were required to consult his records and answer the question put to him. On the other hand, it is readily apparent that defendants will suffer a serious hardship in the preparation of their case if they cannot discover before trial the documents which allegedly contain evidence of their misuse and negligent operation of the diesel engines. The records, of course, are available to them, but the files are voluminous, were prepared according to methods with which only plaintiffs are familiar, and are partially in German. Accordingly, the trial court did not abuse its discretion in concluding that good cause for a protective order had not been shown.
Plaintiffs, the MTU corporations, invoke La.C.C.P. 1460 and contend that their broad offer of documents for inspection and copying is a sufficient answer to the question to which Mr. to Roxel failed to respond. Article 1460 provides that where the answer to an interrogatory may be derived from business records, if the burden of ascertaining the information is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to specify and make available the records. Accepting arguendo plaintiffs' dubious premise that a party may invoke La.C.C.P. art. 1460 to cut off a deposition, especially as to questions about business records regarding which its employee has already testified at length, the article nevertheless does not permit plaintiffs the option of merely producing the records in this case. Evidence in the record indicates that the burden of extracting the information from the business records would be greater on the discovering party than on the owner of the business. The documents in question were prepared by the deponent or under his supervision, portions of the documents were in German, and the deponent was more familiar with the methods and terminology employed in the documents. Moreover, to properly invoke La.C.C.P. art. 1460, the interrogated party must "specify the records from which the answer may be derived or ascertained ... in sufficient detail to permit the interrogating party to *1070 locate and to identify, as readily as can the party served, the records from which the answer may be ascertained." Thus, a broad statement that the information sought is contained in documents available for inspection is not sufficient under the rule. Rather, the interrogated party must specifically and precisely identify which documents contain the information. Budget Rent-A-Car of Missouri, Inc. v. Hertz Corporation, 55 F.R.D. 354, 357 (1972); See Manual for Complex and Multi District Litigation §§ 1.50 & 2.50 (1982). When plaintiffs' counsel offered the business records in lieu of Mr. to Roxel's answer to a deposition question, he did not specifically identify the individual documents which would provide the information sought. Accordingly, for all of these reasons the tender of business records in this case was not a sufficient response, and does not acquit the plaintiffs from responsibility for a failure in discovery.

3. Sanctions
Discovery is designed generally to proceed at the initiative of the parties without requiring the involvement of the court. Consequently, parties are able to make extremely broad and burdensome demands for information or to resist discovery unjustifiably. Because of this potential for abuse, the Code of Civil Procedure provides for protective orders to protect parties from improper uses of discovery and for various sanctions to induce compliance unjustifiably withheld and to deter future improper resistance.
Under La.C.C.P. art. 1469, if a deponent fails to answer a question in a deposition taken on notice, the discovering party may move the court for an order compelling an answer. Depending on the court's decision on the motion, the court is required to impose reasonable expenses, including attorney's fees, for either pursuing or opposing the motion, on the losing party, unless he demonstrates that his position was substantially justified or other circumstances make such award unjust.
If the court grants an order compelling discovery under La.C.C.P. art. 1469, and that order is subsequently disobeyed, La.C. C.P. art. 1471 authorizes the court to impose such sanctions as are just, including the following: to establish facts as proven for purposes of the litigation; exclude claims or defenses; strike the pleadings; dismiss the action; or enter a default judgment. In addition, the court may treat the failure as contempt or order the payment of reasonable expenses and attorney's fees caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.
Thus, there is a distinction between the sanctions available for a failure to comply with party-initiated discovery and for a failure to comply with a court order to provide or permit discovery. Except in cases where the recalcitrant party fails to attend his deposition or to respond to either interrogatories or a request for inspection, see La.C.C.P. art. 1473, he may be required only to pay the reasonable expenses of obtaining an order compelling discovery, unless his failure of discovery is in violation of a preexisting court order. When a party fails to obey an order to provide or permit discovery, however, he is susceptible to a panoply of sanctions ranging from the establishment of facts for purposes of the litigation to contempt, and including an order that he pay the reasonable expenses and attorney's fees caused by his failure. Compare La.C.C.P. arts. 1469 and 1471. These rules, in effect, offer a built-in second chance for most recalcitrant parties to comply with discovery and pay motion costs and fees before becoming amenable to the more severe sanctions associated with a disobedience of court-ordered discovery. Note, The Emerging Deterrence Orientation in the Imposition of Discovery Sanctions, 91 Harvard L.Rev. 1033 (1978).

Decree
The trial court judgment compelling discovery and ordering supplemental depositions for that purpose is affirmed, *1071 but the sanctions imposed exceed those authorized by law and are therefore set aside. The case is remanded for the trial court to determine and order the payment of reasonable costs, including attorney fees, incurred in obtaining the order.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
MARCUS, J., concurs and assigns reasons.
MARCUS, Justice (concurring).
I concur in the majority opinion except that I do not think that Dr. Dinger, a party to the lawsuit, not qualified as an expert, should be compelled to give his opinion or conclusion as to what corporate action he would have advised regarding a special warranty provision; however, counsel for MTU of Friedrichshafen erred by instructing his client not to answer any further inquiries about the special warranty.