GUIDRY, J.
li>We granted certiorari in this matter to consider a party’s right to electronic discovery under the 2007 amendments to La. C.C.P. arts. 1461 and 1462.
FACTS AND PROCEDURAL HISTORY
Louisiana Workers’ Compensation Corporation (“LWCC”) provided workers’ compensation insurance coverage to Quality Exterior Services, LLC (“QES”) from January 2005 to October 2010. In 2009, LWCC performed an audit of the payroll records of QES for the 2008-2009 policy period, which allegedly revealed that one of QES’s subcontractors, Roofing Contractors, Inc. (RCI), failed to maintain its own workers’ compensation insurance. The contract between LWCC and QES provided that LWCC could retroactively increase QES’s premium calculation if QES’s subcontractors did not maintain their own workers’ compensation coverage. Thus, based on RCI’s alleged failure to maintain its own workers’ compensation insurance during the policy year January 6, 2008 to January 6, 2009, LWCC increased QES’s premium for that policy year. QES refused to pay the premium increase, and LWCC filed suit against QES to recover the unpaid portion of the 2008-2009 premium in the amount of $58,850.64, plus stipulated damages provided for in the insurance contract.
In response to the petition filed by LWCC, QES filed a peremptory exception raising the objections of no cause of action and lack of service of process and answered the petition to deny liability and assert several affirmative defenses; thus, issue was joined and the parties commenced discovery. Included in the discovery propounded by QES was a “Request for Production of Documents,”[1] pursuant *1036 to which the following instruction was given:
IsPlease be advised that any and all electronic documents, fíles or data which is requested herein must be provided to Coulon in the native format. This requires that you provide the oriyinally created data in the format utilized by the software originally used to create the data. For example, if the data was oriyinally recorded or drafted using Microsoft Word, please provide us with the Word formatted document, otherwise indicated as a “ *.doc” file. If a document is requested that was originally drafted, sent and/or otherwise existing in an electronic format, we request that the document be provided to us in the native electronic format. [Emphasis provided in original text.]
In response to the request for production of documents, LWCC provided a “complete copy” of its policy file for QES. QES objected to the manner in which LWCC produced the documents, and by subsequent communication with counsel for LWCC, QES insisted that the documents produced by the LWCC be provided in their original, electronically-stored format. When LWCC refused to comply with this request, QES filed a motion to compel with the trial court. Following a hearing on the motion, the trial court denied the motion, and QES filed the instant writ application seeking supervisory review of the trial court’s ruling.
DISCUSSION
The primary issue raised in this writ application is whether the trial court abused its discretion in denying the motion to compel discovery. It is well settled under Louisiana law that the discovery statutes are to be liberally and broadly ^construed to achieve their intended objectives. Bridges v. Hertz Equipment Rental Corp., 08-0400, p. 3 (La.6/20/08), 983 So.2d 1256, 1258. A party generally may obtain discovery of any information which is relevant to the subject matter involved in the pending action. See La. C.C.P. art. 1422. Based on our review of the discovery requests and the evidence presented by the LWCC in opposing the motion, we find that the trial court abused its discretion in failing to grant the motion.
Louisiana Code of Civil Procedure article 1461 states, in pertinent part:
Any party may serve on any other party a request (1) to produce and permit the party making the request, or someone acting on his behalf, to inspect, copy, test, and sample any designated documents or electronically stored information, including writings, drawings, graphs, charts, photographs, phono-rec-ords, sound recordings, images, and other data or data compilations in any medium from which information can be obtained, translated, if necessary, by the respondent through detection and other devices into reasonably usable form....
*1037 In conjunction with Article 1461, La. C.C.P. art. 1462 further provides, in pertinent part:
A. ... The request may specify the form or forms in which information, including electronically stored information, is to be produced.
B. (1) ... The written answer or reasons for objection to each request for production of documents shall immediately follow a restatement of the request for production of documents to which the answer or objection is responding. The party submitting the request may move for an order under Article 1469 with respect to any objection to or other failure to respond to the request, or any part thereof, or any failure to permit inspection as requested. If objection is made to the requested form or forms for producing information, including electronically stored information, or if no form was specified in the request, the responding party shall state in its response the form or forms it intends to use.
(2) A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought shall show that the information is not reasonably accessible because of undue burden or cost. If' that I,.¡showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause. The court may specify conditions for the discovery considering the criteria and limitations of Article 1426.
C. ... When electronically stored information is produced, the responding party shall identify the specific means for electronically accessing the information.
[[Image here]]
E. If the requesting party considers that the production of designated electronically stored information is not in compliance with the request, the requesting party may move under Article 1469 for an order compelling discovery, and in addition to the other relief afforded by Article 1469, upon a showing of good cause by the requesting party, the court may order the responding party to afford access under specified conditions and scope to the requesting party, the representative of the requesting party, or the designee of the court to the computers or other types of devices used for the electronic storage of information to inspect, copy, test, and sample the designated electronically stored information within the scope of Articles 1422 and 1425. [Emphasis added.]
In the matter before us, QES expressly requested that any electronically-stored documents related to the 2008-2009 policy-year audit be produced in their native format. In response, LWCC objected to producing the requested documents in their native format, alleging that such production would be unduly burdensome. In raising the objection, LWCC contends that “the steps necessary to provide the information in the form requested by [QES] would begin with a review of the earliest back up data for policy # 109868, originally effective 1/6/2005, which is on the 2005 year-end backup [tape] dated 1/1/2006.” Further, LWCC contends that it no longer possesses the necessary software and hardware to access the information contained on the 2005 year-end backup tape. In support of this contention, LWCC offered the affidavit of its assistant vice president of information technology services, Glenn M. Audiffred, and also had Mr. Audiffred testify at the hearing on the motion to compel.
*1038 In resisting a motion to compel, it has been held:
[Louisiana Code of Civil Procedure article] 1469 requires that good cause be shown for a protective order, placing the burden on the party | (¡seeking relief to show some plainly adequate reason therefore. There must be a particular and specific demonstration of fact, as distinguished from stereotyped and con-clusory statements, in order to establish good cause. The existence of good cause for a protective order is a factual matter to be determined from the nature and character of the information sought weighed in the balance of the factual issues involved and a comparison of the consequential hardships caused by granting or denying the order.
MTU of North America, Inc. v. Raven Marine, Inc., 475 So.2d 1063, 1069 (La.1985). We observe that LWCC asserts, without explanation or support, that in order to fulfill QES’s request for information related to the 2008-2009 policy-year audit, it must provide information from 2005 year-end backup tape. From our review, LWCC solely contends that due to the undue burden of accessing the 2005 year-end backup tape, it cannot produce any electronically-stored documents relative to the 2008-2009 policy-year audit.
We cannot agree with the LWCC’s circular reasoning that the allegedly undue burden of producing the 2005 year-end backup tape precludes it from producing any electronically-stored information relative to the 2008-2009 policy-year audit. While we question why LWCC would still have possession of the 2005 year-end backup tape, when it claims that it no longer has the means of accessing or utilizing the information contained on the tape, we, nonetheless, do not see how that restricts LWCC from producing more recent information, and in particular, information from the 2008-2009 policy-year audit, which is the specific time period covered by QES’s request for production.
Mr. Audiffred stated that he was not asked about any data that may have been produced in 2009 or 2010, which is when the audit of the 2008-2009 policy period occurred. He said he was asked to determine what it would take to provide data that was entered when the policy was originally written in 2005. When counsel for QES attempted to question Mr. Audiffred regarding whether the computer systems used to access information from 2005 were the same as were [7needed or used to access information from 2009 to 2010, which again are the years in which the audit of the 2008-2009 policy period occurred, counsel for LWCC objected, contending that the system used by the third-party vendor who performed the audit “may be relevant to getting the native data in native format, but [Mr. Audiffred has] already testified that we didn’t produce the original data for the 2009-2010 audit period.”
Mr. Audiffred testified that to his “knowledge,” Overland Solutions Incorporated (OSI), the third-party vendor that performed the audit at issue, did not use computers or software provided by LWCC to perform the audit in question, but used its own. He explained LWCC received information from OSI in the form of a “data dump and an XML file that we then take and process into our policy system.” When questioned about the statement in his affidavit that “native format is so vague as to be virtually impossible to comply with,” Mr. Audiffred explained “[w]e can certainly provide the data in ... or it can be provided in native format. What you’re referencing [regarding the statement in the affidavit] is understanding the data in that native format would be vague.” When later asked what made an XML file unreadable, Mr. Audiffred indicated that *1039 the file was not unreadable, but he explained his belief that information on the file would be useless without “understanding how to parse — or after you parse information, how to basically use the information that’s in the file ... how it relates.” Mr. Audiffred admitted that he did not know if the paper documents that LWCC wished to submit in response to the request for documents were also kept electronically.
While it is commendable that LWCC is concerned about QES being able to understand the information it has requested, that concern is not a sufficient basis for denying QES’s request for electronic discovery relative to the 2008-2009 policy-year audit. Should QES encounter problems understanding the data ]sproduced, then its option would be to conduct further discovery and research to obtain an understanding of what the data means. As Mr. Audiffred’s testimony relates mainly to the burden of producing information from the 2005 year-end backup tape, and not the XML file and data delivered to LWCC in conjunction with the 2008-2009 policy-year audit, we find that the LWCC failed to show the discovery sought is not reasonably accessible because of undue burden or cost. Accordingly, we hold that the motion to compel should be granted with respect to the information specifically requested by QES.
CONCLUSION
Pursuant to granting the writ of certio-rari to consider this matter, we render judgment herein to reverse the ruling of the trial court and hereby grant QES’s motion to compel. In granting the motion to compel, we order the LWCC to produce the requested information in native format within 30 days of the handing down of this writ action.
WRIT GRANTED AND MADE PEREMPTORY; JUDGMENT ON MOTION TO COMPEL REVERSED; AND JUDGMENT RENDERED GRANTING THE MOTION TO COMPEL.

. The request for production of documents included the following three requests:

Request for Production No. 1

Please produce any and all documents supporting your answer to Interrogatory No. 1 [requesting an explanation why LWCC adjusted QES’s premium amount by including in the premium calculation $92,214.00 paid to RCI during the January 6, 2008 to January 6, 2009 policy period].

*1036
Request for Production No. 2

Please produce all internal LWCC documents relating to any audit(s) of QES covering the [2008-2009] Policy Period. Your response should include, but not be limited to, memoranda, emails, letters, reports, charts, tables, and summaries in any way related to QES audits.

Request for Production No. 3

Please produce all internal LWCC documents relating to LWCC’s decision to adjust QES’s premium for the [2008-2009] Policy Period. Your response should include, but not be limited to, memoranda, emails, letters, reports, charts, tables, and summaries in any way related to the premium adjustment.